**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ADAM CARMON, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:23-CV-00944 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CITY OF NEW HAVEN, ET AL. | : | SEPTEMBER 16, 2025 |
|     Defendants. | : | |

**RULING ON MOTION TO PRECLUDE EXPERT TESTIMONY OF DEFENDANT, JAMES STEPHENSON (DOC. NO. 117)**

**I.   INTRODUCTION**

The plaintiff, Adam Carmon ("Mr. Carmon"), brings this suit against the City of New Haven, Lee Dease, Administrator of the Estate of Leroy Dease, Michael Sweeney, James Stephenson, Gilbert Burton, James Ponteau, and Peter Carusone, alleging constitutional violations under section 1983 of title 42 of the U.S. Code, negligence; negligent infliction of emotional distress; and asserting indemnification against the City of New Haven under section 7−465 of the General Statutes of Connecticut.  See Amended Complaint ("Am. Compl.") (Doc. No. 71).

Before the court is the plaintiff's Motion to Preclude Expert Testimony that may be offered at trial by James Stephenson ("Detective Stephenson").  Motion to Preclude Expert Opinion Testimony by Defendant James Stephenson ("Carmon Mot.") (Doc. No. 117); Reply in Support of Motion to Preclude Expert Opinion Testimony by Defendant James Stephenson ("Def.'s Reply") (Doc. No. 128).  Detective Stephenson Opposes the Motion.  See Objection to Motion to Preclude Expert Opinion Testimony by Defendant James Stephenson ("Opp'n") (Doc. No. 127).

For the reasons that follow, the court grants the Motion.

1

## II.    BACKGROUND

On February 3, 1994, a gunman fired multiple shots through a window of an apartment on 810 Orchard Street in New Haven, Connecticut.  Am. Compl. at ¶ 27.  Inside the apartment was Danielle Taft, an infant, who was shot and killed.  Id. at ¶ 29.  Also shot, and paralyzed, was Danielle Taft's grandmother, Charlean Troutman.  Id. at ¶ 28–30.

On February 23, 1994, Mr. Carmon was arrested for the February 3 shooting; he was subsequently convicted of the murder, among other crimes, and was sentenced to 85 years imprisonment.  See id. at ¶¶ 206, 254.  After having spent 29 years in prison, a Connecticut Superior Court granted Mr. Carmon's Petition for the Writ of Habeas Corpus ("Habeas Petition"), concluding that "the suppressed evidence and the new forensic evidence places the entire case against the petitioner in such a different light as to undermine confidence in the verdict that the jury reached[.]"  Carmon v. State, No. NNH-CV20-6107902, 2022 WL 17423683 (Conn. Super. Ct. Nov. 30, 2022).  Mr. Carmon was released from prison on June 13, 2023, and all charges against him have been dismissed.  Am. Compl. at ¶¶ 277–78.

According to Mr. Carmon, in his Amended Complaint, James Stephenson, a New Haven Police Department ("NHPD") Detective, allegedly played an important role in Mr. Carmon's wrongful conviction.  See id. at ¶ 223.  At the time of the murder investigation, Detective Stephenson was NHPD's firearm and toolmark examiner.  Id. at ¶ 23.  Detective Stephenson allegedly inspected a Browning Hi-Power 9mm pistol, which was discovered near the scene of a separate shooting that occurred a few days after the murder of Danielle Taft.  Id. at ¶¶ 97, 102.  The NHPD labeled this Browning Hi-Power 9mm pistol as item "K1."  Id. at ¶ 101.

2

In examining K1, Detective Stephenson allegedly determined that breech face markings imparted onto bullet casings test-fired from K1 matched the markings present on casings recovered at the scene of Danielle Taft's murder. Id. at ¶ 103. Detective Stephenson's notes, however, allegedly do not explain what led him to this conclusion. Id. at ¶ 104. Separate from breech marks, Detective Stephenson allegedly noticed casings, recovered from the murder scene, contained "distinctive" chamber marks. Id. at ¶ 105. However, Detective Stephenson allegedly did not identify "distinctive" chamber marks on casings test-fired by K1. Id. at ¶ 107-08. As part of his investigation, Detective Stephenson allegedly searched a firearms database maintained by the Federal Bureau of Investigation ("FBI") called General Rifling Characteristics ("GRC"). See id. at ¶ 112-14. Detective Stephenson's search of the database allegedly did not reveal a single Browning firearm that matched the measurements of casings recovered from the murder scene. Id. at ¶ 110–11. Indeed, when Detective Stephenson allegedly searched the database for Browning firearms, none of the results matched the measurements of casings taken from the scene of the murder. See id. at ¶ 112–14.

On February 14, 1994, Detective Stephenson documented his conclusion that K1 was the weapon used in the murder of Danielle Taft. Id. at ¶ 129. However, Detective Stephenson allegedly failed to share with prosecutors that casings recovered from the murder scene contained certain distinctive markings that were not present on casings test fired from K1. Id. at ¶ 215. Detective Stephenson also allegedly failed to share with prosecutors the results of his GRC database searches. Id. Finally, Detective Stephenson allegedly failed to share with the prosecution the rationale for his conclusion that the breech marks on K1 matched the marks on casings recovered from

3

the murder scene. Id. In March 1995, Mr. Carmon was tried for Danielle Taft's murder. Id. at ¶ 222. During the trial, Detective Stephenson testified that K1 was the murder weapon. Id. at ¶¶ 222-23, 240.

On July 17, 2023, following his release from prison, Mr. Carmon filed the instant lawsuit. See Complaint (Doc. No. 1). Mr. Carmon filed the instant Motion on February 12, 2025, in which he seeks to preclude Detective Stephenson from sharing his expert opinion that it is Detective Stephenson's present conclusion K1 was used in connection with the crimes for which Mr. Carmon was convicted. See Mot.

### III.   LEGAL STANDARD

Expert testimony is admissible under Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. Rules of Evid. 702. The District Court acts as a gatekeeper, charged with the task of deciding whether the expert's testimony satisfies Rule 702's general requirements. See Daubert v. Merrell Dow Pharms., 509 U.S. 579, 113 (1993). In defining the gatekeeping role of the District Court, the Second Circuit has distilled Rule 702's requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact. See Nimely v. City of New York, 414 F.3d 381, 396-97 (2d Cir. 2005).

If an expert meets the threshold requirement of qualification, the court must determine whether the expert's testimony itself is reliable. In Daubert, the Supreme Court identified several factors that may be considered in assessing reliability:

> (1) whether a theory or technique "can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation'" and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community.

Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) (quoting Daubert, 509 U.S. at 593–94 (internal quotations and citations omitted)). These factors, however, do not constitute a "definitive checklist or test." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999). Instead, the inquiry is a flexible one and must be "tied to the facts of a particular case," with attention to "the nature of the issue, the expert's particular expertise, and the subject of his testimony." Id.

## IV.    DISCUSSION

The court must decide whether it is appropriate to preclude Detective Stephenson from testifying that it is his current expert opinion the Browning Hi-Power 9mm pistol, referred to as K1, was used in connection with the murder of Danielle Taft.

Mr. Carmon argues that the court should preclude Detective Stephenson from so testifying because the methods Detective Stephenson used to identify K1 as the murder weapon are outdated and no longer generally accepted by firearms examiners. Carmon Mot. at 7–13; Def.'s Reply at 1–3. As a separate basis for Mr. Carmon's Motion, he argues that the field of firearms examination lacks scientific validity, and Detective Stephenson's expert opinion is therefore unreliable. Carmon Mot. at 13–15; Def.'s Reply at 1–3.

5

Detective Stephenson responds that, simply because certain standards have changed since he arrived at his conclusions in the mid-1990s, these changed standards do not change his opinion that K1 was the murder weapon nor do these changed standards invalidate his opinion. Opp'n at 6–7. Detective Stephenson argues further that the field of firearms examination is a generally accepted scientific practice. Id. at 7–10.

### A. Failure to Disclose Expert Witness

Detective Stephenson has not disclosed himself as an expert witness. Ordinarily, the court would conclude that, having elected not to disclose himself as an expert, Detective Stephenson does not intend to offer an expert opinion at trial, thus making the instant Motion to Preclude moot. However, Detective Stephenson's Opposition to the instant Motion suggests that the court is wrong to conclude that he will not seek to introduce his own expert opinion testimony at trial. Detective Stephenson maintains that it "was not readily apparent" that he needed to disclose himself as an expert witness. Opp'n at 10. He notes further that, in the event the court concludes he was required to disclose himself as an expert, he "may seek permission to make such disclosure nunc pro tunc[.]" Id. at 10 n. 1.

According to the court's October 31, 2023 Scheduling Order, "a party intending to call any expert witness must comply with Fed. R. Civ. P. 26(a)(2)." Scheduling Order (Doc. No. 46) at 2 (emphasis added). The Scheduling Order further provides that "[a]ll such experts will be disclosed by the defendant on or before September 30, 2024." Id.

(emphasis added).[1]  Though the court extended the deadline to disclose expert witnesses to November 27, 2024, it is now over nine months past that extended deadline.  See Order Granting Motion for Extension of Time (Dkt. No. 100).

The purpose of disclosure is to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."  United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958); see generally 8 C. Wright, A. Miller, & R. Marcus, Federal Practice and Procedure § 2001 (3d ed.).  By using the word "any" in its Scheduling Order, the court did not exclude parties from its requirement that expert witnesses be disclosed.  See Order Granting Motion for Extension of Time (Dkt. No. 100).  Detective Stephenson cannot, in contravention to the court's Scheduling Order, wait until he sees fit to disclose himself as an expert witness.  Accordingly, and solely for the purpose of issuing a Ruling on Mr. Carmon's Motion to Preclude, the court will treat Detective Stephenson's Opposition as a disclosure.

    B.    Generally Accepted Methodology

In support of his Motion to Preclude, Mr. Carmon argues Detective Stephenson's present expert opinion as to K1 does not comply with the generally accepted methodology used by today's firearm and toolmark examiners.  Carmon Mot. at 7.  As a result of Detective Stephenson's reliance on presently outdated methods, Mr. Carmon asserts Detective Stephenson's present expert opinion is invalid.  Id.  Detective Stephenson responds that, while certain standards of firearm and toolmark examination

---

[1] Magistrate Judge Spector subsequently extended the expert disclosure deadline, see Order Re. Mot. Extension Time (Dkt. No. 100), but did not change the substance of the court's Scheduling Order. Id.

have changed since he rendered his original opinion about K1 in the mid-1990s, these changes do not invalidate his expert opinion today that K1 was used in the murder at issue. Opp'n at 4–7.

Before considering the reliability of the methodology employed by Detective Stephenson, the court must first determine whether the proffered expert testimony is relevant under Federal Rule of Evidence 401. Amorgianos, 303 F.3d at 265. Here, the court understands Detective Stephenson's proffered testimony to be that it is his present expert opinion K1 was used in the murder of Danielle Taft. See Opp'n at 4–7. Detective Stephenson's expert testimony, if true, would make it less likely Detective Stephenson violated Mr. Carmon's constitutional rights. Thus, the proffered testimony is undoubtedly relevant. See Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co., 239 F.3d 179, 184 (2d Cir. 2001).

Next, the court turns to Mr. Carmon's argument that Detective Stephenson's testimony does not satisfy Federal Rule of Evidence 702, which requires expert testimony to be "the product of reliable principals and methods." Fed. R. Evid. 702. In considering this question, "the district court must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practices of an expert in the relevant field.'" Amorgianos, 303 F.3d at 265–66 (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)). This inquiry is flexible and will vary on a case-by-case basis. Id. at 266; Daubert, 509 U.S. at 594. Nonetheless, the Second Circuit has instructed that, while a minor deviation from a generally reliable method of expert analysis does not render expert testimony inadmissible, the court should exclude

evidence when "the flaw is large enough that the expert lacks good grounds for his or her conclusions." Id. at 267 (internal quotation marks omitted).

Mr. Carmon argues that Detective Stephenson: (1) did not undertake a subclass analysis to determine whether breech marks present on bullet casings recovered at the crime scene and on casings test fired from K1 were unique to K1 or were the result of a characteristic shared among other Browning firearms; (2) failed to adequately document the basis for his conclusion that K1 was used in the murder at issue; (3) was not sequestered from biasing information; and (4) did not have a second firearm and toolmark examiner verify his conclusions. See Carmon Mot. at 7–13; Def.'s Reply. The court will consider each of these alleged infirmities in turn.

### 1. Subclass Characteristics

The Association of Firearm and Toolmark Examiners ("AFTE") sets the standards for those in the field of firearm and toolmark examination. United States v. Johnson, No. 16-CR-281 (PGG), 2019 WL 1130258, at *7 (S.D.N.Y. Mar. 11, 2019), aff'd, 861 F. App'x 483 (2d Cir. 2021) (citing, United States v. Ashburn, 88 F. Supp. 3d 239, 246 (E.D.N.Y. 2015)). The AFTE publishes a peer-reviewed journal, which other courts have concluded is authoritative, United States v. Ashburn, 88 F. Supp. 3d 239, 246 (E.D.N.Y. 2015) (collecting cases), in which the importance of subclass analysis has been discussed. According to a 2018 article published in AFTE's journal, firearms may contain "surface features," such as distinctive marks, that arise as a result of the manufacturing process. Pl.'s Ex. F (Ronald Nichols, Subclass Characteristics: From Origin to Evaluation, 50 AFTE Journal 68 (2018)) at 68–69. For example, a machine used to shape metal parts used in a firearm may itself contain a defect that the machine imparts to a subset of firearms produced by a manufacturer. See id. at 68–71. A

9

firearm and toolmark examiner must, according to the same article, "make a purposeful and deliberate examination of the tool working surface . . . [to] determine whether . . . subclass characteristics are . . . present and, if so, [consider] how they might impact the examination." Id. at 85. Failure to "adequately address" subclass characteristics can "result in the incorrect association of tool marks as having been produced by the same tool." Id. at 84. Detective Stephenson acknowledged that, as of 2018, it was standard in the field of firearm and toolmark analysis to consider whether the item being examined contained subclass characteristics. Pl.'s Ex. E (Stephenson Dep.) at 61:5-62:20.

    This sort of subclass analysis was nascent when Detective Stephenson examined K1 in the mid-1990s. Id. at 69:18-21. Though Detective Stephenson acknowledges consideration of subclass characteristics is an important methodological component of modern toolmark examination, he does not assert that he considered subclass characteristics in forming his opinion about K1. Opp'n at 4–7. Indeed, during a hearing held by the Connecticut Superior Court on Mr. Carmon's Habeas Petition, Detective Stephenson testified that he did not have an understanding of the manufacturing process of the Browning Hi-Power 9mm firearm and thus could not know whether the manufacturing process would create subclass characteristics. Pl.'s Ex. A at 4:3-20.

    Detective Stephenson maintains that his failure to apply modern methods of firearm examination does not invalidate his conclusion that K1 was used in the crimes at issue. Opp'n at 6–7. However, Detective Stepheson admitted he did not follow present generally accepted methods of firearm examination by failing to consider subclass

characteristics. By failing to consider subclass characteristics, Detective Stephenson did not exclude the possibility that the breech marks imparted onto casings fired from K1 were the result of a subclass characteristic, rather than a unique mark contained only on K1. See Pl.'s Ex. F. at 85. The court concludes that this failure is a significant deviation from generally accepted methods of modern firearm and toolmark examination such that it calls into question the grounds for Detective Stephenson's present expert conclusions about K1. In forming his present expert opinion about K1, Detective Stephenson did not comply with the generally accepted methods used by modern examiners and thus his proffered expert testimony would not satisfy Federal Rule of Evidence 702. Accordingly, the court will not allow Detective Stephenson to testify at trial about his present expert opinion that K1 was used to commit the crimes for which Mr. Carmon was convicted.

2. Remaining Arguments About Methodology

Among the remaining arguments raised by Mr. Carmon is his assertion that Detective Stephenson failed to adequately document his findings in a manner that would comply with today's standards of firearms and toolmark examination. Carmon Mot. at 11–12. Detective Stephenson insists that his current expert opinion is not invalidated even though standards in firearm and toolmark examination may have changed. See Opp'n at 4–7.

Guidance adopted by the AFTE in 2008 provides that the "scientifically acceptable standard for documentation" requires "[a]t a minimum" that documentation include a detailed description of individual or class characteristics so that another examiner, without reviewing the evidence in question, could "understand what was compared, and evaluate why the examiner arrived at the reported conclusion." Pl.'s Ex

11

G (Scientific Working Group for Firearms and Toolmarks, Guidelines for the Standardization of Comparison Documentation).

Detective Stephenson testified during the Connecticut Superior Court's hearing held on April 29, 2022, regarding Mr. Carmon's Habeas Petition that the modern process of firearm examination involves "a lot more documentation." Pl.'s Ex. A at 7:7–7:11. Present documentation standards require the use of photographs that clearly identify important markings on the item being examined. Id. at 7:7–8:23. In his Opposition, Detective Stephenson offers no evidence that the his documentation from the mid-1990s would comply with modern documentation standards set by the AFTE. See Opp'n at 4–7. In a vacuum, the court might consider Detective Stephenson's seeming lack of documentation to be a minor deviation from generally accepted methods. Viewed in conjunction with his failure to undertake a subclass analysis, however, Detective Stephenson's failure to document his findings in accordance with modern generally accepted methods bolsters to the court's conclusion that his examination does not satisfy Federal Rule of Evidence 702.

Mr. Carmon further argues Detective Stephenson's examination does not comply with generally accepted methods because Detective Stephenson was not shielded from biasing information and did not have a second examiner verify his conclusions. Carmon Mot. at 11–12. The court is not convinced, however, that sequestration from biasing information or a review by a second examiner are necessary components of modern firearm and toolmark examination such that these infirmities mean Detective Stephenson's examination does not comply with generally accepted methods used by today's firearm and toolmark examiners. See State v. Raynor, 337 Conn. 527 (2020)

(recognizing admissibility of expert testimony on firearm and toolmark analysis and declining to impose limits on such testimony based on the facts and circumstances of the case).  While many firearm laboratories require examiners now have a second verification, there is no scientifically proven reason why two examiners are more acceptable than one.  See United States v. Shipp, 422 F. Supp. 3d 762, 780 (E.D.N.Y. 2019).

The court will not permit Detective Stephenson to offer expert opinion testimony at trial that it is his opinion, either present or past, that K1 was used in connection with the crimes for which Mr. Carmon was convicted.  The court reaches this conclusion because Detective Stephenson's examination of K1 does not comply with modern, generally accepted methods of firearms examination.  Thus, Detective Stepheson did not apply reliable methods upon which to base his present expert conclusions.  However, the fact that, in the mid-1990s, his opinion was offered − that K1 was used in connection with the crimes for which Mr. Carmon was convicted − may be offered as factual evidence, subject to any other evidentiary objection.

    C.    <u>Foundational Validity of Firearm and Toolmark Examination</u>

Mr. Carmon further argues that, the field of firearm and toolmark examination is generally unreliable, and for this reason, Detective Stephenson should be precluded from offering his expert opinion at trial.  Carmon Mot. at 13-15.  The court has already concluded that Detective Stephenson must be precluded from offering his present expert opinion.  Supra, part IV.B.  Thus, the court does not reach Mr. Carmon's argument that the entire field of firearm and toolmark examination is suspect.

## V. CONCLUSION

For the reasons stated above, the court grants the Motion to Preclude Expert Testimony of James Stephenson (Doc. No. 117).

**SO ORDERED.**

Dated at New Haven, Connecticut this 16th day of September 2025.

                                                  /s/ Janet C. Hall
                                                  Janet C. Hall
                                                  United States District Judge