**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---

ADAM CARMON,

              Plaintiff,

-against-

CITY OF NEW HAVEN; LEE DEASE as Administrator of the Estate of Leroy Dease; MICHAEL SWEENEY; JAMES STEPHENSON; GILBERT BURTON; JAMES PONTEAU; and PETER CARUSONE, in their individual capacities,

              Defendants.

---

No. 3:23-CV-944 (JCH)

December 12, 2025

---

## JOINT TRIAL MEMORANDUM

### 1.    TRIAL COUNSEL[1]

For Plaintiff Adam Carmon: Douglas E. Lieb (dlieb@kllflaw.com), Alison Frick (africk@kllflaw.com), Shirley LaVarco (slavarco@kllflaw.com), Kaufman Lieb Lebowitz & Frick LLP, 18 East 48th Street, Suite 802, New York, NY 10017, (212) 660-2332

---

[1] We refer to Defendants Sweeney, Dease, Burton, Ponteau, and Carusone as the "Individual Defendants." Stephenson has noticed an interlocutory appeal of the Court's ruling and order denying his motion for summary judgment on the basis of qualified and absolute immunity. No other Defendant has appealed. The parties do not realistically expect Stephenson's appeal to be resolved by the March 2, 2026, trial date. Consistent with the Court's directives during the September 25 calendar call, the parties are proceeding on the understanding that the trial will proceed as scheduled on all claims other than those against Stephenson or against the City arising from Stephenson's conduct. Stephenson has filed a motion to stay the proceedings against him, but has indicated he will remain available to be called as a fact witness.

For Defendant City of New Haven: Thomas Gerarde tgerarde@hl-law.com; Amanda Stone, astone@hl-law.com

For Defendant Michael Sweeney: Michael T. Ryan (mtryan@ryandelucalaw.com), Jonathan Zellner (jczellner@ryandelucalaw.com), Ryan Ryan Deluca LLP, 1000 Lafayette Boulevard, Suite 800, Bridgeport, CT 06604, (203) 549-6650

For Defendant Lee Dease as Administrator as the Estate of Leroy Dease: Scott R. Ouellette (souellette@wwolaw.com), Williams, Walsh & O'Connor, LLC, 37 Broadway, North Haven, CT 06473, (203) 234-6333

For Defendants Gilbert Burton, James Ponteau, and Peter Carusone: William J. Melley (wjmelley@wjmelley.com), 250 Hudson Street, Hartford, CT 06106, (860) 965-4044

## 2.    JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) and 28 U.S.C. § 1367(a).

## 3.    JURY/NON-JURY

This is a jury case.

## 4.    LENGTH OF TRIAL

Plaintiff expects approximately 3 weeks for the presentation of his case, including cross-examination of his witnesses. The parties are in agreement that witnesses should be called once absent good cause in the interest of efficiency. On cross-examination, Defendants may offer any relevant testimony beyond the scope of Plaintiff's direct in order to avoid recalling witnesses in their case in chief.

Defendants expect an additional 7 days for the cross examination of Plaintiff's witnesses, and presentation of their additional witnesses, including cross-examination thereof.

### 5.    FURTHER PROCEEDINGS

Defendant City of New Haven's motion to bifurcate trial (ECF No. 163) and Defendant James Stephenson's motion to stay the proceedings as to him (ECF No. 184) are currently pending. The parties are filing additional motions *in limine* concurrent with this memorandum. Otherwise, no further proceedings before the Court are required prior to trial.

### 6.    NATURE OF CASE

a.    <u>All parties and claims alleged in the Amended Complaint (ECF No. 71)</u>. This is a civil rights case under 42 U.S.C. § 1983 with supplemental state law claims.  In his Amended Complaint, Mr. Carmon asserted § 1983 causes of action for: (1) suppression of exculpatory evidence / civil *Brady*, directly and/or by failure to intervene, against all of the Individual Defendants; (2) fabrication of evidence, directly and/or by failure to intervene, against Dease, Ponteau, Burton, and Carusone; (3) malicious prosecution, directly and/or by failure to intervene, against Dease, Ponteau, and Sweeney; (4) material omissions from arrest warrant affidavit / civil *Franks*, directly and/or by failure to intervene, against Dease and Sweeney; (5) coerced self-incrimination against Dease and Ponteau; and (6) municipal liability under *Monell* against Defendant City of New Haven for (A) suppressing *Brady* material and/or (B) fabricating evidence, on both (i) deliberate indifference/failure-to-supervise and (ii) official-custom theories as to each. Mr. Carmon also asserts state law causes of action for (7) negligence and (8) negligent infliction of emotional distress (NIED) against all

Individual Defendants, as well as against the City for (9) indemnification under Conn. Gen. Stat. § 7-465 and (10) direct liability under Conn. Gen. Stat. § 52-557n.

b.    <u>Claims to be pursued at trial</u>:

In the Court's 9/18/25 summary judgment ruling, the Court partially dismissed Count 9 to the extent it sought indemnification for willful acts or for damages awarded on the basis of physical harm, and partially dismissed Count 10 to the extent it sought to impose negligence liability for willful acts.

Plaintiff does not intend to pursue Count 8 (NIED) at trial. With respect to his coerced false self-inculpatory statement, Plaintiff does not intend to pursue Count 5 to the extent it arises from his Fifth Amendment right against self-incrimination because the statement was never introduced against him in a criminal proceeding, *see Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). Plaintiff does intend to pursue Count 5 to the extent it arises from his Fourteenth Amendment fair trial right not to be deprived of liberty based upon fabricated evidence, *see* FAC    392, thereby effectively merging Count 5 with Count 2. Thus, Plaintiff intends to pursue the following claims at trial:

- Count 1 – Fourteenth Amendment – Suppression of Evidence Favorable to the Accused – against all Individual Defendants

- Count 2 – Fourteenth Amendment – Evidence Fabrication – against Defendants Dease, Ponteau, Burton, and Carusone

- Count 3 – Fourth Amendment – Malicious Prosecution – against Defendants Sweeney, Dease, and Ponteau

- Count 4 – Fourth Amendment – *Franks* / False Arrest Warrant – against Defendants Sweeney and Dease

- Count 6 – Municipal Liability – against Defendant City of New Haven, based on constitutional violations committed by all Individual Defendants as well as Ralph DiLullo and Anthony DiNello

- Count 7 – Statutory and Common-Law Negligence – against all Individual Defendants

- Count 9 – Indemnification Under General Statute § 7-465 – against the City, except to the extent dismissed by the Court's summary judgment ruling

- Count 10 – Statutory and Common-Law Negligence Under General Statute § 52-557n – against Defendant City of New Haven, based on the acts and omissions of all Individual Defendants as well as Ralph DiNello and Anthony DiLullo, except to the extent dismissed by the Court's summary judgment ruling

    c.    <u>Defenses to be pursued at trial</u>:

<u>Defendant City of New Haven:</u>

- COUNT SIX-The City of New Haven denies that any of the individual defendants violated the plaintiff's constitutional rights and proximately caused the Plaintiff damages.

- COUNT SIX -The City of New Haven denies liability under *Monell* for any constitutional violations found to have been committed by any of the individual defendants.

- COUNT SIX -Specifically, the City asserts there was no City policy to violate constitutional rights, whether sourced from a deliberate indifference by City policy making officials or bodies to known constitutional violations; or from a custom or practice of violating constitutional rights so pervasive as to constitute the equivalent of city policy.

- COUNT SIX -The City further asserts that any such policy was not the moving force behind any constitutional violation found to have been committed by any individual defendant.

- COUNTS SEVEN AND NINE--The City denies that any of its former employees, including the named defendants, was negligent, and further denies that any of its former employees proximately caused the Plaintiff damages. Also, there is no statutory negligence claim against the individuals only common law

- COUNTS SEVEN AND NINE-- The City denies that it has any obligation to indemnify -any of the individual defendants pursuant to CGS-7-465.

- COUNT TEN-The City denies that it has any direct negligence liability under CGS 52-557n, and further denies that it proximately caused Plaintiff damages.

- COUNTS SEVEN, NINE, TEN -The City asserts that the plaintiffs negligence claims are barred by governmental immunity, both at common law and pursuant to CGS 52-557n(a)(2)(A);  CGS 52-557n(a)(2)(B); CGS 52-557n(b)(6); also there is no common law claim viable against the City only CGS 52-557n.

- COUNTS SEVEN, NINE, TEN -The City asserts that the plaintiff's negligence claims are barred by Plaintiff's contributory negligence

- COUNTS  SEVEN, NINE, TEN. The City asserts the Plaintiffs that the Plaintiffs negligence claims are barred by the applicable statute of limitations and statute of repose, CGS 52-584 and CGS 7-465.  The City recognizes that these defenses have been addressed in the Court's ruling on the City's motion for summary judgment; however, the City is listing them in this section as a means of confirming that the defenses have not been abandoned and will be pursued at trial, post-trial and/or on appeal.

- COUNTS SIX, SEVEN, NINE, TEN—The City asserts the defense of collateral estoppel regarding the issues conclusively determined prior to trial, which will be the subject of Motion(s) in Limine

Individual Defendants:

- COUNTS ONE, TWO, THREE, FOUR – The individual defendants deny that any of them violated the Plaintiff's constitutional rights and proximately caused the Plaintiff damages.

- COUNTS ONE, TWO, THREE, FOUR – The individual defendants assert that they are entitled to qualified immunity from suit for any of the Plaintiff's claims arising pursuant to 42 U.S.C. § 1983.

- COUNT SEVEN – The individual defendants deny that any of them were negligent and further deny that any of them proximately caused the Plaintiff damages.

- COUNT SEVEN – The individual defendants assert that the Plaintiff's negligence claims are barred by governmental immunity, both at common law and pursuant to CGS 52-557n(a)(2)(A); CGS 52-557n(a)(2)(B); CGS 52-557n(b)(6).

6

d.    <u>Proposed statement of the case that may be read to the jury</u>:

*The parties are in agreement on the statement below except as to the yellow-highlighted words. Plaintiff's position is that the highlighted words are essential to provide the jury accurate information, and specifically to avoid the false and grossly misleading impression that Plaintiff's conviction is intact and that he simply served out a lawful sentence. Defendant City of New Haven objects to the highlighted words, and asks the Court to reserve decision until the City's Motion in Limine regarding the decision of the Habeas Court (Alander, J.) is ruled upon.  The habeas court overturned the verdict based on reasons mostly unrelated to NHPD, and declined to find actual innocence.*

The Plaintiff, Adam Carmon, was arrested for a shooting in New Haven in February 1994, convicted at trial in 1995, and was incarcerated until <mark>his conviction was overturned by a judge in</mark> 2022. The Defendants in this case are the City of New Haven and five of its former police officers who investigated the crime. The Plaintiff claims that the Defendants violated his civil rights and were negligent in their investigation, causing him to be wrongfully convicted. He also claims that the violation of his rights was part of a broader custom of misconduct by the New Haven Police Department. The five officers deny liability and claim that they acted reasonably in their investigation. The City of New Haven denies liability and claims that its policies and customs were lawful and appropriate.

**7.    TRIAL BY MAGISTRATE JUDGE**

The parties do <u>not</u> consent to trial before a Magistrate Judge.

**8.    LIST OF WITNESSES**

**For Plaintiff:**

7

Witnesses Plaintiff Expects to Call

1. Cecilia Bratten: Attorney Bratten (formerly Wiederhold) is expected to testify regarding the application for the arrest warrant that she approved for the arrest of Adam Carmon and the materiality of the omissions therefrom.

2. Daryle Breland: Detective (ret.) Breland is expected to testify concerning the circumstances of the statement(s) of Marcus Pearson in the Caprice Hardy homicide investigation and the NHPD's policies and customs.

3. Gilbert Burton: Defendant Burton is expected to testify to his role in the 810 Orchard Street homicide investigation and the NHPD's policies and customs.

4. Adam Carmon: Mr. Carmon is expected to testify concerning the facts and circumstances of his arrest, prosecution, and incarceration, including his emotional distress and other damages.

5. Peter Carusone: Defendant Carusone is expected to testify to his relationship with Jamie Stanley and their interactions in the context of the 810 Orchard Street homicide investigation.

6. City of New Haven, through its designee under Federal Rule of Civil Procedure 30(b)(6) (by designation, see below): The City will testify regarding the policies and customs of the NHPD, including customs surrounding interviewing witnesses and suspects, documenting and/or disclosing exculpatory information, and supervising detectives.

7. Glenn Conway: Attorney Conway is expected to testify to the discovery produced to the defense in advance of Mr. Carmon's criminal trial and to his interactions with Peter Carusone regarding Jamie Stanley.

8. John Dattilo (by designation, see below): Detective (ret.) Dattilo will testify concerning the 1984 investigation of Leroy Harris, including the interview of witness Jerome Downing.

9. Leroy Dease (by designation, see below): Defendant Dease will testify to his role in the Orchard Street shooting investigation and the NHPD's customs or practices with respect to interviewing suspects.

10. Anthony DiLullo (by designation, see below): Detective (ret.) DiLullo will testify concerning the investigation of the homicide of Penny Serra, resulting in the arrest of Anthony Golino, and the policies and customs of the NHPD.

11. Charles Drago: Mr. Drago is expected to testify as a retained expert witness to the ways in which the NHPD deviated from generally accepted police practice in the 810 Orchard Street homicide investigation, the other investigations discussed in his Rule 26 report, in its typical practices and customs, and in its training, supervision, and discipline of detectives.

12. Nancy Franklin, Ph.D.: Dr. Franklin is expected to testify as a retained expert witness concerning human memory and eyewitness identification in general, and the unreliability of the purported eyewitness identifications of Adam Carmon as the alleged perpetrator of the 810 Orchard Street homicide in particular.

13. Joseph Greene: Detective (ret.) Greene is expected to testify about the investigations of the homicides of Andrew Paisley and Hury Poole (resulting in the arrest of Daryl Valentine), the homicide of Terrance Gamble (resulting in the arrest of Maceo Streater), the homicide of Marquis Alexander (resulting in the arrest of Eric Ham), and the practices and customs of the NHPD.

14. Kristina Higgins: Ms. Higgins is expected to testify regarding the circumstances under which she made statements to the NHPD implicating Daryl Valentine in the murder of Hury Poole.

15. Alfred Kitchens (by designation, see below): Mr. Kitchens will testify regarding the circumstances under which he gave a statement to the NHPD on February 9, 1994, and the veracity of its contents.

16. Bruce Koenig: Mr. Koenig is expected to testify as a retained expert witness (by pre-recorded video deposition) to the existence and nature of recording events in the audio recordings of the statements of Adam Carmon, Stefon Morant, Jose Roque, and Hector Ortiz.

17. Anthony Little (by designation, see below): Mr. Little will testify regarding the circumstances of the Orchard Street homicide and the NHPD's investigation thereof, including the circumstances under which he gave a statement to the NHPD on February 9, 1994.

18. Nicholas Pastore (by designation, see below): Former Chief Pastore will testify regarding NHPD practices and customs with respect to interviewing witnesses and suspects, documenting and disclosing exculpatory information, and supervising detectives, including Vincent Raucci.

19. James Ponteau: Defendant Ponteau is expected to testify regarding his role in the 810 Orchard Street investigation and the NHPD's policies and customs.

20. Vincent Raucci (by designation, see below): Det. (ret.) Raucci will testify about his investigation into the murders of Ricardo Turner and Lamont Fields, his knowledge of law enforcement investigations into his activities, and the NHPD's policies and customs.

21. Najee Reynolds: Mr. Reynolds is expected to testify regarding his relationship with his father, Adam Carmon, and the ways it was affected by Mr. Carmon's wrongful incarceration.

22. Lisa Rocchio, Ph.D.: Dr. Rocchio is expected to testify as a retained expert witness concerning Mr. Carmon's mental and psychological condition prior to his wrongful incarceration and his emotional distress damages.

23. Brian Sullivan: Captain (ret.) Sullivan is expected to testify regarding his conduct in the investigation of the homicide of Eugenio Vega and the NHPD's policies and customs.

24. Michael Sweeney: Defendant Sweeney is expected to testify about the 810 Orchard Street homicide investigation that he supervised; the circumstances of the statement of Ovil Ruiz / Augustin Castro in the Turner/Fields homicide investigation in which he was found liable for violating the constitutional rights of Stefon Morant; the investigation of the homicide of Markiest Alexander in which he was found liable for violating the constitutional rights of Eric Ham; and the practices and customs of the NHPD.

Witnesses Plaintiffs May Call

25. Arthur Brantley: Mr. Brantley may testify regarding the circumstances of the 810 Orchard Street homicide and the NHPD's investigation.

26. Holbert Brown: Mr. Brown may testify regarding the circumstances of the 810 Orchard Street homicide and the NHPD's investigation.

27. Valerie Brown: Ms. Brown may testify regarding the whereabouts of Mr. Carmon on February 3, 1994, and Mr. Carmon's emotional distress damages.

28. Lisa Bull DiLullo: Ms. Bull DiLullo may testify regarding an incident in which her former husband, Det. Anthony DiLullo, hired a witness to a homicide at a diner to perform repair work on her home, and her investigation into allegations of corruption by NHPD Detective Vincent Raucci as an FBI Agent.

29. Scott Lewis: Mr. Lewis may testify regarding the NHPD's fabrication of evidence against him and Stefon Morant for the murders of Ricardo Turner and Lamont Fields.

30. Marcus Pearson: Mr. Pearson may testify regarding the circumstances under which the NHPD coerced him to falsely state that Vernon Horn lent him a stolen cell phone in January 1999.

31. Joseph Pettola: Joseph Pettola may testify about the customs and practices of the NHPD, including documenting and/or disclosing exculpatory information and the cultural expectation to keep silent about misconduct by fellow officers.

32. Diane Sellers: Ms. Sellers may testify regarding the veracity of Arthur Brantley's statements to the NHPD in connection with the 810 Orchard Street investigation.

33. James Stephenson: Mr. Stephenson may testify (in effect as a nonparty witness for purposes of this trial) regarding his examination of screwdrivers in connection with the 810 Orchard Street homicide investigation.

34. James Wines: Retired FBI Special Agent Wines may testify that a cellular phone call that the NHPD claimed to have originated from Marcus Pearson's home in New Haven actually originated from Bridgeport.

35. Keeper of the Records for the Connecticut Department of Corrections

36. Keeper of the Records for the New Haven Police Department

37. Keeper of the Records for the State of Connecticut Division of Public Defender Services

38. Keeper of the Records for the State of Connecticut Division of Criminal Justice

39. Keeper of the Records for the State of Connecticut Judicial Records Center and/or Office of the Clerk for the Judicial District of New Haven

40. A summary witness who may testify as to the contents of the NHPD file for the Orchard Street homicide.

41. A summary witness who may testify as to the contents of PX128, the jury portions of the criminal trial transcript.

Plaintiff reserves the right to cross-examine Defendants' witnesses, to call any witness on Defendants' witness list, and to call additional witnesses for impeachment or rebuttal.

**For Defendants:**

Witnesses Defendant Dease expects to call:

Dease at this time does not intend to call any witnesses in addition to those identified in the preliminary witness lists provided by the Plaintiff and the City of New Haven (the "City"). Dease reserves the right to call at trial any witnesses identified by the Plaintiff, the City, or any other party, to cross-examine any witnesses, and to call additional witnesses for impeachment or rebuttal.

Witnesses Defendant Dease may call:

Lee Dease: Lee Dease, as Administrator of the Estate of Leroy Dease may testify as to his knowledge of Leroy Dease and his Estate.

Witnesses Defendant Sweeney expects to call:

Sweeney at this time does not intend to call any witnesses in addition to those identified in the preliminary witness lists provided by the Plaintiff and the City of New Haven (the "City"). Sweeney reserves the right to call at trial any witnesses identified by the Plaintiff, the City, or any other party, to cross-examine any witnesses, and to call additional witnesses for impeachment or rebuttal.

<u>Witnesses Defendant Sweeney may call</u>:

See above.

<u>Witnesses Defendants Burton, Ponteau, and Carusone expect to call</u>:

Burton, Ponteau, and Carusone at this time do not intend to call any witnesses in addition to those identified in the preliminary witness lists provided by the Plaintiff and the City of New Haven (the "City"). Burton, Ponteau, and Carusone reserve the right to call at trial any witnesses identified by the Plaintiff, the City, or any other party, to cross-examine any witnesses, and to call additional witnesses for impeachment or rebuttal.

<u>Witnesses Defendants Burton, Ponteau, and Carusone may call</u>:

See above.

<u>Witnesses Defendant City of New Haven expects to call</u>:

The City of New Haven reserves the right to call at trial any witness identified by any other party, and further identifies as expected witnesses:

1. Adam Carmon—fact witness—Live and/or through sworn testimony in prior proceedings--will testify as to any involvement in the Taft Homicide, his interactions with the New Haven Police Department, including interviews and statements, prior arrests, prior involvement in criminal activity, and damages

2. Arthur Brantley-- fact witness--Live and/or through sworn testimony in prior proceedings--will testify as to any involvement in the Taft Homicide, his interactions with the New Haven Police Department, including interviews and statements, prior arrests, prior involvement in criminal activity

3. Anthony Little—fact witness--Live and/or through sworn testimony in prior proceedings—will testify as to any involvement in the Taft Homicide, his interactions with the New Haven Police Department, including interviews and statements, prior arrests, prior involvement in criminal activity

4. Anthony Stevenson—fact witness Live and/or through sworn testimony in prior proceedings—will testify as to any involvement in the Taft Homicide, his interactions with the New Haven Police Department, including interviews and

statements, prior arrests, prior involvement in criminal activity

5. Jamie Stanley—fact witness— Live and/or through sworn testimony in prior proceedings--will testify as to her witnessing of the Taft homicide and her identification of Adam Carmon as the perpetrator of the Taft homicide

6. Raymond Jones— Live and/or through sworn testimony in prior proceedings--fact witness will testify as to his witnessing of the Taft homicide and her identification of Adam Carmon as the perpetrator of the Taft homicide

7. Tim MacDonald—fact witness Live and/or through sworn testimony in prior proceedings--will testify as to any involvement in the Taft Homicide, his interactions with the New Haven Police Department, including interviews and statements, prior arrests, prior involvement in criminal activity.

8. Edward Manning—fact witness—Live and/or through sworn testimony in prior proceedings—will testify as to any involvement in the Taft Homicide, his interactions with the New Haven Police Department, including interviews and statements, prior arrests, prior involvement in criminal activity

9. Jerry Gates—fact witness Live and/or through sworn testimony in prior proceedings—will testify as to any involvement in the Taft Homicide, his interactions with the New Haven Police Department, including interviews and statements, prior arrests, prior involvement in criminal activity

10. Lucky Rice-- fact witness live and/or through sworn testimony in prior proceedings--will testify as to any involvement in the Taft Homicide, his interactions with the New Haven Police Department, including interviews and statements, prior arrests, prior involvement in criminal activity

11. James Stephenson—fact witness—his examination and identification of shell casings from the Taft homicide scene, and a handgun recovered by the NHPD and the connection of the casings to a specific handgun

12. Charlene Troutman—fact witness Live and/or through sworn testimony in prior proceedings—will testify as to any involvement in the Taft Homicide, her interactions with the New Haven Police Department, including interviews and statements, prior arrests, prior involvement in criminal activity

13. Shirley Troutman—fact witness Live and/or through sworn testimony in prior proceedings—will testify as to any involvement in the Taft Homicide, her interactions with the New Haven Police Department, including interviews and statements, prior arrests, prior involvement in criminal activity

14. Michael Sweeney— fact witness Live and/or through sworn testimony in prior proceedings—employed by the New Haven Police Department at the time of the Taft homicide, will testify as to his involvement in the Taft homicide investigation (also listed below as a witness in the Monell case).

15. Leroy Dease—fact witness—deceased, will testify through former testimony

designated in this JTM—employed by the New Haven Police Department at the time of the Taft homicide, will testify as to his involvement in the Taft homicide investigation.

16. Gil Burton—fact witness Live and/or through sworn testimony in prior proceedings—employed by the New Haven Police Department at the time of the Taft homicide, will testify as to his involvement in the Taft homicide investigation.

17. Pete Carusone—fact witness Live and/or through sworn testimony in prior proceedings—employed by the New Haven Police Department at the time of the Taft homicide, will testify as to his involvement in the Taft homicide investigation.

18. James Ponteau—fact witness Live and/or through sworn testimony in prior proceedings—employed by the New Haven Police Department at the time of the Taft homicide, will testify as to his involvement in the Taft homicide investigation.

19. Joseph Greene—fact witness Live and/or through sworn testimony in prior proceedings—employed by the New Haven Police Department at the time of the Taft homicide, will testify as to his involvement in the Taft homicide investigation.

20. Anthony DiLullo—fact witness- deceased—will testify--through former testimony designated in this JTM,  employed by the New Haven Police Department at the time of the Taft homicide, will testify as to his involvement in the Taft homicide investigation.

21. Ralph DiNello—fact witness—deceased-- fact witness--through former testimony designated in this JTM—employed by the New Haven Police Department at the time of the Taft homicide, will testify as to his involvement in the Taft homicide investigation.

22. Scott Backlowski—fact witness Live and/or through sworn testimony in prior proceedings—employed by the New Haven Police Department at the time of the Taft homicide, as will testify as to his involvement in the Taft homicide investigation, other criminal investigations involving Adam Carmon and his experience with Adam Carmon.

23. Rose Dell—fact witness Live and/or through sworn testimony in prior proceedings-formerly employed at New Haven Police department, will testify as to NHPD policies, practices, training, procedures, and discipline, as City designee

24. Nicholas Barreiro—expert witness—audio expert witness, will testify as to his analysis of audio taped statement given by Adam Carmon, and others if the court allows such testimony to be introduced by Plaintiff, and will rebut opinions of Plaintiffs expert Bruce Koenig

25. Jerry Rodriguez—expert witness—will testify as to accepted police practices in the

mid 1990's, and before and after that period, and will respond to hypothetical questions as to whether certain conduct would be within accepted practices regarding policies, training, discipline, supervision, management. Will also rebut opinions of Plaintiffs expert Charles Drago.

26. Bruce Koenig—expert witness—audio tape recorder expert witness will testify about the hardware utilized in the early 1990's and his analysis of various tape recordings; further, the facts and opinions to which Mr. Koeing is expected to testify are:

1. The specific times during witness interviews where a stop/start of the recording device occurred.

2. Any identified over recording appearing on the Adam Carmon's or any other witness' taped interview could be as small as an instant;

3. Witness marks can be made on a tape if the record head is accidentally activated during the taking or subsequent transcription of a witness statement;

4. Some of the machines utilized to make microcassette recordings in the 1990s had slides that activated the "record" feature just past the "play" feature; and

5. The machines utilized to make microcassette recordings in the 1990s were battery operated with 1–3 hours of battery life.

27. Brian Donnelly—fact and expert witness, former FBI special agent will testify about accepted practices of investigation, including statement taking, in the 1990s and his investigation of New Haven police practices in the 1990s

28. Lisa Roccio—expert witness-- is not specially retained.

The defendant expects Dr. Rocchio to testify regarding the elements, symptoms and core features of post-traumatic stress disorder, and that post traumatic stress disorder is a treatable condition.

29. Chris Monturo—expert witness-- The defendant expects to call Chris Monturo to testify consistent with his disclosure made by co-defendant, James Stephenson, on November 27, 2024.  Mr. Monturo will testify to the opinions contained in his expert report dated November 26, 2024, a copy of which has been provided to plaintiff's counsel. He is not specially retained.

30. Charles Drago—expert witness—Mr. Drago is expected to testify as to the generally accepted practices employed by police officers in the 1990s, and also whether certain conduct by City of New Haven police officers complied with generally accepted practices. He makes no findings of fact and will be basing his opinions on assumed facts and/or hypothetical questions. The facts and opinions to which Mr. Drago is expected to testify are:

15

- The International Association of Chiefs of Police Training Key (IACP) is not a mandated policy, but a guide of accepted practices.
- The IACP Model Policies are not mandated policies, but a guide of accepted practices.
- The IACP National Law Enforcement Policy Center Concepts and Issues Paper on Criminal Investigations are not mandated policies, but a guide of accepted practices.
- The years these policies were created, and his knowledge and adaptation of the same.
- Police officers are not trained to look and decide whether or not a certain item of evidence is exculpatory or not, or whether it is going to help the defense or not help the defense. If police officers get evidence, they document it.
- It is accepted practice for police officers to take statements from witnesses in the field, as well as at the police department; and statements can be taken from a witness in a car.
- It is accepted practice to speak to a witness prior to having them provide a recorded statement, to build a rapport with the witness, to convince them to provide a recorded statement if they are reluctant, or to discuss alternatives to a recorded statement, such as a handwritten statement.
- In the Danielle Taft homicide investigation, it was important that the New Haven police officers be open to the possibility that other persons may have committed the homicide.
- When considering whether to reopen the investigation of the Danielle Taft homicide, a Chief of the New Haven Police Department may properly consider:
    - (a) The credibility of witnesses and/or identifications, including Jamie Stanley, Alfred Kitchens, Anthony Little;
    - (b) The fact that a jury found that there was proof beyond a reasonable doubt that Adam Carmon was guilty of felony murder;
    - (c) The Connecticut Appellate Court's decision affirming the conviction (*State v. Carmon*, 47 Conn. App. 813 (1998));
    - (d) That the Court denied Mr. Carmon's first habeas petition seeking a new trial *in Carmon v. Warden*, No. CV 98 0411292, 2002 WL 31600999 (Conn. Super. Ct. Nov. 6, 2002));
    - (e) That the Court denied Mr. Carmon's second habeas petition seeking a new trial, *Carmon v. Warden*, No. CV 03 0474044, 2006 WL 3491669 (Conn. Super. Ct. Nov. 14, 2006));
    - (f) That the Connecticut Appellate Court affirmed the denial of the second habeas petition (*Carmon v. Commissioner of Correction*, 114 Conn. App. 484 (2009));
    - (g) That the trial court denied Mr. Carmon's third habeas petition seeking a new trial and the Appellate Court affirmed the judgment (*Carmon v. Commissioner of Correction*, 148 Conn. App. 780 (2014));

16

(h)    That the Court denied Mr. Carmon's fourth habeas petition seeking a new trial. (*Carmon v. Warden*, No. CV 13 4005289S, 2016 WL 3912116 (Conn. Super. Ct. July 13, 2016));

(i)    That the Appellate Court affirmed the denial of Mr. Carmon's fourth habeas petition (*Carmon v. Commissioner of Correction*, 178 Conn. App. 356 (2017))

The facts and opinions to which Mr. Drago is expected to testify are more fully set forth in the report prepared as a retained expert witness by the plaintiff and/or his sworn deposition testimony taken on October 22, 2024.

31. Richard Silverstein—New Haven—fact witness—will testify about his representations of Adam Carmon in the 1990's including pretrial in 1994-95, and at trial in 1995.

<u>Witnesses Defendant City of New Haven may call</u>:

*The following witnesses are* Monell-*related and may be called by the City of New Haven.*

1.  Joseph Pettola—fact witness will testify about policies, customs and practices at the NHPD in the 1980's and 1990s, and his involvement in the Turner/Fields homicide, including witness interviews

2.  Vaughn Maher—fact witness will testify about policies, customs and practices at the NHPD in the 1980's and 1990s, and his involvement in the Turner/Fields homicide, including witness interviews

3.  Vincent Raucci—fact witness will testify about policies, customs and practices at the NHPD in the 1980's and 1990s, and his involvement in the Turner/Fields homicide, including witness interviews

4.  Robert Lawlor—fact witness will testify about policies, customs and practices at the NHPD in the 1980's and 1990s, and his involvement in the Turner/Fields homicide, including witness interviews

5.  Michael Sweeney—fact witness will testify about policies, customs and practices at the NHPD in the 1980's and 1990s, and his involvement in the Turner/Fields homicide, including witness interviews

6.  Nicholas Pastore—fact witness will testify about policies, customs and practices at the NHPD in the 1980's and 1990s, and his actions taken as Chief of Police of the NHPD, his management of the NHPD, training and discipline of officers, involvement in the Turner/Fields homicide investigation and other NHPD investigations

7.  Brian Sullivan—fact witness will testify about policies, customs and practices at the NHPD in the 1980's and 1990s, and his involvement in the Turner/Fields homicide, including witness interviews, and other homicide investigations

17

8. Atty. Michael Moskowitz—Will testify as to his involvement with NHPD, including its investigation of the Turner-Fields homicide and the FBI investigation of the NHPD, as attorney for Ovil Ruiz

9. Scott Lewis—will testify as to any involvement in the Turner-Fields Homicide, his interactions with the New Haven Police Department, including interviews and statements, prior arrests, prior involvement in criminal activity.

10. Stefon Morant—will testify as to any involvement in the Turner-Fields Homicide, his interactions with the New Haven Police Department, including interviews and statements, prior arrests, prior involvement in criminal activity.

11. Ovil Ruiz a/k/a Augustin Castro—will testify as to any involvement in the Turner Fields Homicide, his interactions with the New Haven Police Department and the FBI, including interviews and statements, prior arrests, prior involvement in criminal activity.

12. Keeper of records CT Judicial Department/Adult Probation department—not limited to Monell case

13. Keeper of Records CT Dept of Corrections—not limited to Monell case

## 9.    DESIGNATIONS OF PRIOR SWORN TESTIMONY

In accordance with the Court's Pretrial Order (ECF No. 46), the parties have submitted transcripts of the testimony designated below, with those portions marked blue for Plaintiff's designations and red for Defendants' designations.

**For Plaintiff:**

1.    Anthony DiLullo

   a. Trial testimony, *State v. Valentine*, CR6-347896 (April 14, 1994): 60:4-10, 60:20-27, 67:21-68:21.

   b. Deposition Vol. I, *Golino v. City of New Haven*, NH-CARMON007789 et seq. (April 5, 1988): 17:19-19:14, 34:1-10, 114:16-115:7.

   c. Deposition Vol. II, *Golino v. City of New Haven*, NH-CARMON007555 et seq. (May 17, 1989): 139:4-141:20, 151:21-153:8, 176:16-178:25, 191:8-195:16, 196:7-199:21, 203:1-205:10, 206:3-15, 208:4-209:17.

   d. Deposition Vol. III, *Golino v. City of New Haven*, NH-CARMON007648 (Nov. 22, 1989): 235:7-12, 246:20-249:13, 303:2-304:6, 324:2:18, 329:13-330:18.

   e. Trial testimony, *Golino v. DiLullo*, NH-CARMON008526 et seq. (July 7-8, 1993): 3:19-5:7, 5:23-7:25, 11:2-12:22, 13:16-14:2, 14:12-17:8, 27:3-13, 28:4-14, 85:6-87:22, 88:9-12, 91:7, 91:14-19, 94:9-95:6,

96:5-97:8, 97:15-99:17, 99:22-100:19, 106:4-9, 107:17-108:2, 120:12-20, 127:13-20, 141:21-144:3, 147:16-148:24, 149:10-13, 173:13-175:14, 183:23-185:6, 187:6-188:2, 188:21-189:3, 199:3-201:21, 223:1-224:10, 231:25-232:13, 235:12-236:12, 275:5-277:7.

2. Anthony Little, Deposition, *Carmon v. State,* PL0002010 et seq. (March 17, 2021): 4:10-25, 50:19-51:6, 53:23-54:8, 55:4-25, 120:18-121:20, 122:23-126:4, 128:18-130:13, 132:17-134:19, 137:8-139:21, 141:13-143:6

3. Alfred Kitchens, Deposition, *Carmon v. State*, PL0000657 eq seq. (June 3, 2021): 8:2-25, 10:20-25, 11:10-12:11, 14:20-15:12, 17:11-20, 18:11-21:9, 21:16-26:9.

4. Leroy Dease

   a. Trial testimony, *State v. Carmon*, PL20203 et seq. (March 31, 1995): 1118:1-1119:8, 1123:2-18.

   b. Hearing testimony, *Carmon v. State*, PL18465 et seq. (May 22, 2002): pp6-7 (PL18470-71).

   c. Hearing testimony, *Jackson v. Warden*, No. TSR-CV05-4000578-S (Feb. 25, 2011): 53:9-24.

   d. Hearing testimony, *Horn v. Warden*, NNH-CV-01-0456995-S (March 18, 2013): 49:3-13, 61:4-11.

5. City of New Haven (by 30(b)(6) designee)

   a. Deposition, *Horn v. City of New Haven* (Sept. 18, 2020): 166:16-167:6, 168:23-174:14, 199:15-200:10, 200:12-201:16, 217:21-220:25, 231:10-232:20, 235:22-236:23, 240:10-241:5, 242:5-12, 258:9-15, 285:5-287:9.

   b. Deposition, *Morant v. City of New Haven* (Jan. 17, 2024): 43:22-44:4, 44:5-13, 45:5-12, 45:15-22, 46:20-47:4, 49:15-50:21, 82:1-83:1, 93:10-21, 236:18-20, 238:4-17, 245:5-22, 250:18-251:5, 257:8-258:10, 271:7-272:21, 274:21-275:2, 275:16-277:2, 277:8-20.

6. Nicholas Pastore

   a. Deposition Vol. I, *Morant v. City of New Haven* (Jan. 16, 2024): 18:24-19:11, 35:10-36:15, 43:15-44:17, 70:5-17, 74:6-75:20, 111:4-12.

   b. Deposition Vol. II, *Morant v. City of New Haven* (Jan. 24, 2024): 213:1-214:8, 256:12-257:15, 260:2-21, 273:20-274:20, 300:2-25.

7. John Dattilo, Trial testimony, *State v. Harris*, CR6-234689 (April 7, 1989): 252:6-10, 254:5-255:4, 256:4-257:7, 301:15-302:9.

8. Vincent Raucci

    a. Video Deposition Vol. I, *Morant v. City of New Haven* (April 5, 2023): 140:11-142:16, 143:21-148:6, 156:10-158:4, 261:9-264:23, 265:7-267:5.

    b. Video Deposition Vol. II, *Morant v. City of New Haven* (April 6, 2023): 311:24-313:7, 406:10-409:6, 412:12-413:23, 486:23-493:21.

    c. Video Deposition Vol. III, *Morant v. City of New Haven* (May 9, 2023): 557:9-560:19, 730:12-735:8, 736:9-739:1, 740:17-24, 742:4-17, 758:20-759:11, 765:16-767:19.

9. Robert Brown, First Habeas, *Carmon v. Warden*, PL0016681 *et seq.* (May 2, 2002): 9:14-19:18

10. Damian Thomas, Deposition, *Carmon v. State*, PL0002748 *et seq.* (Feb. 2, 2022): 14:8-13, 23:22-24:6, 27:12-28:9, 34:12-36:2, 94:16-18

**For Defendant City of New Haven:**

**PLAINTIFF'S OBJECTION TO ALL CITY OF NEW HAVEN DESIGNATIONS:** Plaintiff objects to these designations as untimely, noncompliant with the Court's pretrial procedures, irrelevant, cumulative, confusing, and likely to cause undue delay. *See* Plaintiff's Motion in Limine to Preclude City's Testimony Designations.

City of New Haven will respond to Plaintiff's motion in limine. Regarding all designations below, the city does not claim colloquy between attorneys and the court, or any testimony to which an objection was sustained, only witness testimony that was allowed by the court.

1. Anthony DiLullo

    a. Trial Testimony, *State v, Valentine*, CR6-347896 (April 13, 1994): 81-116

    b. Trial Testimony, *State v, Valentine*, CR6-347896 (April 14, 1993): 24-70

    c. Deposition Testimony, Vol. I, *Golino v. City of New Haven*, at p. 3-119 (April 5, 1988): 3-119

    d. Deposition Testimony, Vol. II, *Golino v. City of New Haven* (May 17, 1989): 125-212

    e. Deposition Testimony, Vol. III, *Golino v. City of New Haven*: 215-347

    f. Trial Testimony, *Golino v. DiLullo*, 3:88-CV-2 (JAC) (July 7, 1993): 3-152

    g. Trial Testimony, *Golino v. DiLullo*, 3:88-CV-2 (JAC) (July 8, 1993): 172-366

h.  Trial Testimony, *State v. Carmon,* CR94-390840 *et seq.* (March 24, 1995): 311-329

i.  Trial Testimony, *State v. Carmon*, CR94-390840 *et seq.* (March 27, 1995): 479-510

j.  Trial Testimony, *State v. Carmon,* CR94-390840 *et seq.* (March 31, 1995): 1062-1110

k.  Trial Testimony, *State v. Carmon,* CR94-390840 *et seq.* (April 4, 1995): 1403-1436

**FURTHER OBJECTIONS TO *STATE V. CARMON* TRIAL TESTIMONY:** Designations do not provide sufficient notice of how Defendants plan to use the testimony; 403 (undue delay, confusion as to non-jury portions, and cumulative, particularly as the March 24 and March 27 testimonies are largely identical); 804(b)(1) (*see* Plaintiff's Motion in Limine to Preclude City's Testimony Designations); 402 (relevance, especially 5-2:27-505:11 regarding which detectives were assigned to the investigation, and April 4 testimony, regarding a purported interaction between Edward Manning and Adam Carmon in arraignment courtroom, which is not directly pertinent to the issues in this case; and all testimony outside the presence of the jury, which will have no bearing on the materiality); 403 (statements attributed to Mr. Carmon, especially that he told DiLullo "Fuck you", are more prejudicial than probative).

**COUNTER-DESIGNATIONS:** To the extent the Court permits Defendants to designate portions of DiLullo's trial testimony, Plaintiff cross-designates 493:15-495:1.

2.  Anthony Little, Deposition Testimony, *Carmon v. State*, NNH CV20-6107902 (March 17, 2021): 4-148

**FURTHER OBJECTION:** 402 (relevance); 403 (undue delay, confusion, cumulative), except as to the portions Plaintiff has designated.

3.  Alfred Kitchens, Deposition Testimony, *Carmon v. State*, NNH CV20-6107902 (June 3, 2021): 4-61

**FURTHER OBJECTION:** 402 (relevance); 403 (undue delay, confusion, cumulative), except as to the portions Plaintiff has designated.

4.  Leroy Dease

a.  Trial Testimony, *State v. Carmon,* CR94-390840 *et seq.* (March 31, 1995): 1110-1134

21

b. Trial Testimony, *State v. Carmon,* CR94-390840 *et seq.* (April 3, 1995): 1264-1279

c. Trial Testimony, *State v. Carmon,* CR94-390840 *et seq.* (April 4, 1995): 1436-1464

> **FURTHER OBJECTIONS TO *STATE V. CARMON* TRIAL TESTIMONY:** Designations do not provide sufficient notice of how Defendants plan to use the testimony; 403 (undue delay, confusion, and cumulative, particularly as the April 3 and April 4 testimonies are largely identical); 402 (relevance as to 1110-1115:4, 1116-1117, 1441:20-13, and especially 1446-1464, which contains no testimony at all). Plaintiff does not object to the portions Plaintiff has designated.

d. First Habeas Hearing Testimony, *Carmon v. State,* CV 98-4111202 *et seq.* (May 22, 2002): 6-18

e. Habeas Hearing Testimony, *Jackson v. Warden,* No. TSR-CV05-4000578-S (Feb. 25, 2011): 41-116

f. Habeas Hearing Testimony, *Horn v. Warden*, NNH-CV05-4000578-S (March 18, 2013): 48-179

> **FURTHER OBJECTION TO *JACKSON* AND *HORN* HABEAS TESTIMONY:** 402 (relevance); 403 (undue delay, confusion, cumulative); 804(b) (at the time of this testimony, the NHPD had failed to turn over 137 pages of exculpatory phone records, among other things, which contradicted and/or impeached the designated testimony, *see* Am. Compl. 200, ECF No. 153, *Horn v. City of New Haven*, 3:18-cv-1502, (D. Conn. May 6, 2020)).

5. City of New Haven

a. Rachel Cain, Deposition Testimony, *Horn v. City of New Haven*, (Sept. 18, 2020): 150-369

b. Rose Dell, Deposition Testimony, *Morant v. City of New Haven* (Jan. 17, 2024): 4-286

> **FURTHER OBJECTIONS:** 402 (relevance); 403 (undue delay, confusion, cumulative); 801 (City may not designate its own testimony), except as to portions that Plaintiff has designated.

6. Nicholas Pastore

a. Deposition Testimony, Vol. I, *Morant v. City of New Haven* (Jan. 16, 2024): 1-70

22

b. Deposition Testimony, Vol. II, *Morant v. City of New Haven* (Jan. 24, 2024): 176-335

> **FURTHER OBJECTIONS:** 402 (relevance); 403 (undue delay, confusion, cumulative), except as to portions that Plaintiff has designated.

7. John Dattilo, Trial Testimony, *State v. Harris*, CR6-234689 (April 7, 1989): 252-312

> **FURTHER OBJECTIONS:** 402 (relevance); 403 (undue delay, confusion, cumulative), except as to portions that Plaintiff has designated.

8. Vincent Raucci

a. Deposition Testimony, Vol. I, *Morant v. City of New Haven* (April 5, 2023): 5-285

b. Deposition Testimony, Vol. II, *Morant v. City of New Haven* (April 6, 2023): 292-548

c. Deposition Testimony, Vol. III, *Morant v. City of New Haven* (May 9, 2023): 557-797

> **FURTHER OBJECTIONS:** 402 (relevance); 403 (undue delay, confusion, cumulative), except as to portions that Plaintiff has designated.

9. Robert Brown, Habeas Hearing Testimony, *Carmon v. Warden* (May 2, 2002): 9-19

10. Damian Thomas, Deposition Testimony, *Carmon v. State*, NNH CV20-6107902 (Feb. 2, 2022): 5-104

> **FURTHER OBJECTIONS:** 402 (relevance); 403 (undue delay, confusion, cumulative), except as to portions Plaintiff has designated.

11. Jamie Stanley

a. Probable Cause Hearing Testimony, *State v. Carmon*, CR 6-390840 *et seq*. (April 7, 1994): 153-162

> **FURTHER OBJECTIONS:** 804(b)(1) (*see* Plaintiff's Motion in Limine to Preclude City's Testimony Designations); 403 (confusion as to non-jury testimony).

b. Trial Testimony, *State v. Carmon,* CR94-390840 *et seq*. (March 24, 1995): 265-311, 335-479

23

**FURTHER OBJECTIONS:** Designation of approximately 150 pages of testimony does not provide sufficient notice of how Defendants plan to use the testimony; 403 (undue delay, confusion as to non-jury testimony, cumulative, especially given that the April 7, 1994 and March 24, 1995 testimonies are largely identical); 804(b)(1) (*see* Plaintiff's Motion in Limine to Preclude City's Testimony Designations); 802 (inadmissible hearsay at 430:22-431:1); 403 (471:2-14 is unfairly prejudicial).

12.   Raymond Jones, Trial Testimony, *State v. Carmon,* CR94-390840 *et seq.* (April 3, 1995): 1198-1279, 1299-1390

> **FURTHER OBJECTIONS:** Designation of approximately 90 pages of testimony does not provide sufficient notice of how Defendants plan to use the testimony; 403 (undue delay, confusion as to non-jury testimony); 804(b)(1) (*see* Plaintiff's Motion in Limine to Preclude City's Testimony Designations).

13.   Anthony Stevenson

a.   Probable Cause Hearing Testimony, *State v. Carmon,* CR 6-390840 *et seq.* (April 7, 1994): 11-49

> **FURTHER OBJECTIONS:** Designation does not provide sufficient notice of how Defendants plan to use the testimony; 403 (undue delay, confusion as to non-jury testimony, and cumulative, as the probable cause hearing and trial testimonies are largely identical); 804(b)(1) (*see* Plaintiff's Motion in Limine to Preclude City's Testimony Designations); 402 (relevance).

b.   Trial Testimony, *State v. Carmon*, CR94-390840 *et seq.* (March 28, 1995): 589-636

> **FURTHER OBJECTIONS:** Plaintiff repeats and incorporates the objections to Stevenson's probable cause hearing testimony.
>
> **COUNTER-DESIGNATIONS:** To the extent the Court permits Defendants to designate portions of Stevenson's trial testimony, Plaintiff cross-designates 610:1-18.

14.   Ralph DiNello, Trial Testimony, *State v. Carmon,* CR94-390840 *et seq.* (March 29, 1995): 764-824

> **FURTHER OBJECTIONS:** Designation does not provide sufficient notice of how Defendants plan to use the testimony; 403 (undue delay and confusion); 402 (relevance, especially but not limited to Stanley's reluctance to identify Raymond Jones at 775:10-784:17); 804(b)(1) (*see* Plaintiff's Motion in Limine to Preclude City's Testimony Designations).

> **COUNTER-DESIGNATION:** To the extent the Court permits Defendants to designate portions of DiNello's trial testimony, Plaintiff cross-designates 769:23-771:18, 774:27-775:9, 785:2-789:4, 803:27-804:22, 862:2-10.

15. Scott Backlowski, Trial Testimony, CR94-390840 *et seq*. (March 28, 1995): 568-589

16. Probable Cause Hearing p. 160-174, including colloquy between Court and Attorneys regarding probable cause, and waiver of further hearing.

> **FURTHER OBJECTIONS:** 804(b)(1) (*see* Plaintiff's Motion in Limine to Preclude City's Testimony Designations); 403 (confusion, prejudice); not testimony amenable to designation under Fed. R. Civ. P. 32.

### For Individual Defendants:

The Individual Defendants at this time do not intend to designate any additional deposition excerpts. The Individual Defendants reserve the right to use at trial any deposition excerpts designated by any other party.

### 10.    INTERROGATORIES/REQUESTS TO ADMIT

Plaintiff intends to admit the following interrogatories and portions of the responses thereto. Plaintiff's position with respect to each interrogatory below is that the portion of the City's response isolated by Plaintiff is the portion that is actually responsive to the question asked. Plaintiff is not obligated to introduce the City's non-responsive self-serving statements about its training, record-keeping, or internal affairs procedures. To the extent a proper basis exists to admit such evidence, the City can seek to introduce it in its case. Should the City raise this in a motion in limine, Plaintiff will respond more fulsomely in his opposition.

Defendant City will state objections in a motion in limine; and also objects to any response other than its full response being published to the jury, as set forth below.

Interrogatory #3 to City: On December 1, 1991, the United States Court of Appeals for the Second Circuit issued a published decision in *Golino v. City of New Haven*, in which it stated in relevant part that Anthony "DiLullo testified at his deposition in the present case that it was his general practice to omit exculpatory information from affidavits submitted in support of applications for warrants." Identify each and every action taken by the NHPD, from the date of DiLullo's deposition in *Golino* until March 3, 1998, to investigate and/or correct any such practice on the part of DiLullo or other members of the NHPD Detective Bureau, including but not limited to: any interviews of DiLullo or other Detective Bureau personnel to determine whether such a practice existed; any reviews of prior arrest warrant affidavits submitted by DiLullo or other Detective Bureau personnel to determine whether they omitted exculpatory information; any written guidance, directives, or General Orders issued concerning the handling of

25

exculpatory information in arrest warrant affidavits; any training provided on the handling of exculpatory information in arrest warrant affidavits; and/or any instances of corrective action or discipline for omitting exculpatory information from arrest warrant affidavits.

**PORTION OF RESPONSE PLAINTIFF SEEKS TO ADMIT**: No action has been identified as needed or taken as a specific response to the *Golino* decision.

**CITY OF NEW HAVEN OBJECTS TO PUBLISHING ONLY PART OF ITS ANSWER AND SUBMITS THE FULL RESPONSE BELOW:**

The City of New Haven responds that each of its Officers has received  rigorous training at the police academy, where the duty to turn over exculpatory evidence to the prosecuting authority was taught, and during service with the NHPD each officer has received yearly training required to maintain his or her state certification, which included a legal update that discussed the latest decisions controlling Police conduct, including the duty to turn over exculpatory evidence. Furthermore, the New Haven Police Department has had in its code of conduct since the 1970's a mandate that no officer shall withhold evidence, or fabricate or destroy any evidence, of any kind, which requires the turning over of exculpatory evidence to the prosecuting authority. The Code of Conduct, in addition, forbids the entry, by any police officer, of any false, inaccurate or otherwise improper information in any official report. No action has been identified as needed or taken as a specific response to the Golino decision.

Interrogatory #5 to City: In or around May 1992, Randy Fleming testified, in sum and substance, at the trial of James Duncan Fleming for the murder of Christian Prince that NHPD Detective Vincent Raucci had coerced him into falsely implicating James Duncan Fleming in the crime. Identify each and every action taken by the NHPD to formally or informally investigate whether Detective Raucci had in fact engaged in the conduct described in Randy Fleming's sworn testimony and/or whether any other member of the Detective Bureau had known of that conduct at the time.

**PORTION OF RESPONSE PLAINTIFF SEEKS TO ADMIT**: No action has been identified as needed or taken as a specific response to the Fleming decision.

**CITY OF NEW HAVEN OBJECTS TO PUBLISHING ONLY PART OF ITS ANSWER AND SUBMITS THE FULL RESPONSE BELOW:**

The City of New Haven responds that each of its Officers has received  rigorous training at the police academy, where the duty to turn over exculpatory evidence to the prosecuting authority was taught, and during service with the NHPD each officer has received yearly training required to maintain his or her state certification, which included a legal update that discussed the latest decisions controlling Police conduct, including the duty to turn over exculpatory evidence.

Furthermore, the New Haven Police Department has had in its code of conduct since the 1970's a mandate that no officer shall withhold evidence, or fabricate or destroy any evidence, of any kind, which requires the turning over of exculpatory evidence to the prosecuting authority. The Code of Conduct, in addition, forbids the entry, by any police officer, of any false, inaccurate or otherwise improper information in any official report. No action has been identified as needed or taken as a specific response to the Fleming decision.

Interrogatory #6 to City: As described by the Connecticut Appellate Court, at the trials of Maceo Streater for the homicide of Terence Gamble, Carol Cheek testified that NHPD Detectives Anthony DiLullo and/or Joe Greene "put[] pressure on her" and/or "stopped the tape several times during her statement to tell her what to say," leading her to falsely implicate Streater in the homicide. *State v. Streater*, 36 Conn. App. 345, 349 & n.4 (1994). Identify each and every action taken by the NHPD to formally or informally investigate whether Detectives DiLullo and/or Greene had in fact engaged in the conduct described in Carol Cheek's sworn testimony, and/or whether any other member of the Detective Bureau had known of that conduct at the time.

**PORTION OF RESPONSE PLAINTIFF SEEKS TO ADMIT**: No action has been identified as needed or taken as a specific response to the Streater decision.

**CITY OF NEW HAVEN OBJECTS TO PUBLISHING ONLY PART OF ITS ANSWER AND SUBMITS THE FULL RESPONSE BELOW:**

The City of New Haven responds that each of its Officers has received  rigorous training at the police academy, where the duty to turn over exculpatory evidence to the prosecuting authority was taught, and during service with the NHPD each officer has received yearly training required to maintain his or her state certification, which included a legal update that discussed the latest decisions controlling Police conduct, including the duty to turn over exculpatory evidence. Furthermore, the New Haven Police Department has had in its code of conduct since the 1970's a mandate that no officer shall withhold evidence, or fabricate or destroy any evidence, of any kind, which requires the turning over of exculpatory evidence to the prosecuting authority. The Code of Conduct, in addition, forbids the entry, by any police officer, of any false, inaccurate or otherwise improper information in any official report. No action has been identified as needed or taken as a specific response to the Streater decision.

Interrogatory #7 to City:  As described by the Connecticut Supreme Court, at the first trial of Darryl Valentine for the homicide of Andrew Paisley and Hury Poole in or about 1994, Regina Coleman and Kristina Higgins testified that they falsely implicated Valentine because they had, in sum and substance, been "threatened," "pressured," and/or "bribed" by NHPD Detective Joe Greene to inculpate Valentine. *State v.*

*Valentine,* 255 Conn. 61, 65-66 (2000). Identify each and every action taken by the NHPD to formally or informally investigate whether Detective Greene had engaged in the conduct described in Regina Coleman and/or Kristina Higgins's sworn testimony, and/or whether any other member of the Detective Bureau had known of that conduct at the time.

> **PORTION OF RESPONSE PLAINTIFF SEEKS TO ADMIT**: No action has been identified as needed or taken as a specific response to the Valentine decision.

> **CITY OF NEW HAVEN OBJECTS TO PUBLISHING ONLY PART OF ITS ANSWER AND SUBMITS THE FULL RESPONSE BELOW**

> The City of New Haven responds that each of its Officers has received  rigorous training at the police academy, where the duty to turn over exculpatory evidence to the prosecuting authority was taught, and during service with the NHPD each officer has received yearly training required to maintain his or her state certification, which included a legal update that discussed the latest decisions controlling Police conduct, including the duty to turn over exculpatory evidence. Furthermore, the New Haven Police Department has had in its code of conduct since the 1970's a mandate that no officer shall withhold evidence, or fabricate or destroy any evidence, of any kind, which requires the turning over of exculpatory evidence to the prosecuting authority. The Code of Conduct, in addition, forbids the entry, by any police officer, of any false, inaccurate or otherwise improper information in any official report. No action has been identified as needed or taken as a specific response to the Valentine decision.


Interrogatory #8 to City: In connection with the February 1991 arrest of Eric Ham for the murder of Markiest Alexander, Assistant State's Attorney David P. Gold wrote [a memorandum], in which ASA Gold stated his intention to "nolle the case . . . and ask NHPD to reopen their investigation into this homicide." ASA Gold wrote that his decision was based on, among other things, his concern that Detective Greene's affidavit in support of the arrest warrant application was "at least misleading, if not intentionally inaccurate," and the recantation of purported eyewitnesses, one of whom said "police told him what had to be said" and the other of whom described "pressure" and "threats" by Detective Greene. Identify each and every action taken by the NHPD, in response to any request by ASA Gold to reopen the Marquis Alexander homicide investigation, to formally or informally investigate whether Detective Greene had in fact engaged in the conduct described by ASA Gold and/or whether any other members of the Detective Bureau had known of that conduct at the time.

> **PORTION OF RESPONSE PLAINTIFF SEEKS TO ADMIT**: No action has been identified as needed or taken as a specific response to the David Gold memo to Michael Dearington.

**CITY OF NEW HAVEN OBJECTS TO PUBLISHING ONLY PART OF ITS ANSWER AND SUBMITS THE FULL RESPONSE BELOW:**

The City of New Haven responds that each of its Officers has received rigorous training at the police academy, where the duty to turn over exculpatory evidence to the prosecuting authority was taught, and during service with the NHPD each officer has received yearly training required to maintain his or her state certification, which included a legal update that discussed the latest decisions controlling Police conduct, including the duty to turn over exculpatory evidence. Furthermore, the New Haven Police Department has had in its code of conduct since the 1970's a mandate that no officer shall withhold evidence, or fabricate or destroy any evidence, of any kind, which requires the turning over of exculpatory evidence to the prosecuting authority. The Code of Conduct, in addition, forbids the entry, by any police officer, of any false, inaccurate or otherwise improper information in any official report. No action has been identified as needed or taken as a specific response to the David Gold memo to Michael Dearington

Interrogatory #9 to City: Identify—by name, date, rank, and discipline imposed—each and every member of the NHPD who was disciplined, investigated, counseled, re-trained, subjected to enhanced or additional monitoring or supervision, disciplined, terminated, or otherwise subjected to employment-related consequences between January 1, 1988, and March 3, 1998, as a result of an allegation, suspicion, or determination that he or she fabricated evidence.

**PORTION OF RESPONSE PLAINTIFF SEEKS TO ADMIT**:  The Defendant/City has no record of any complaint, whether external or internal, being made between 1988-1998 that evidence was fabricated. The Defendant/City has confirmed it has no record of any employee being disciplined between 1988-1998 for fabricating evidence.

**CITY OF NEW HAVEN OBJECTS TO PUBLISHING ONLY PART OF ITS ANSWER AND SUBMITS THE FULL RESPONSE BELOW:**

Defendants will seek to identify relevant internal affairs records and supplement this response regarding discipline issued as a result of a finding of fabricated evidence.

[Supplement]

The defendant has undertaken an extensive search for internal affairs records from 1988-1998, and specifically relating to fabricated evidence. The Defendant/City notes that in accordance with Section 7-109 of the Connecticut General Statutes, Internal Affairs Investigations between 1988-1998 that did not result in a substantiation of the Complaint allegations were approved for destruction.  A copy of the letter approving destruction is provided.  The

Defendant/ City has provided what it found regarding internal affairs investigations, even though notifications do not pertain to fabricated evidence. The Defendant City reserves the right to supplement this interrogatory, in accordance with the Federal Rules of Civil Procedure.

See attached documents Bates Numbered NH-CARMON 008895-NH-CARMON 008974.(defendant City claims all identified pages should be submitted if this answer is published to the jury)

Interrogatory #10 to City: Identify—by name, date, rank, and discipline imposed—each and every member of the NHPD who was investigated, counseled, re-trained, subjected to enhanced or additional monitoring or supervision, disciplined, terminated, or otherwise subjected to employment-related consequences between January 1, 1988, and March 3, 1998, as a result of an allegation, suspicion, or determination that he or she omitted exculpatory information from an arrest warrant application or failed to disclose or communicate exculpatory information learned during a criminal investigation to the State's Attorney's Office.

**PORTION OF RESPONSE PLAINTIFF SEEKS TO ADMIT**: The Defendant/City has no record of any complaint, whether external or internal, being made between 1988-1998 regarding omitting exculpatory information from an arrest warrant application or failing to disclose or communicate exculpatory information learned during a criminal investigation to the State's Attorney's Office. The Defendant/City has confirmed it has no record of any employee being disciplined between 1988-1998 for omitting exculpatory information from an arrest warrant application or failing to disclose or communicate exculpatory information learned during a criminal investigation to the State's Attorney's Office.

**CITY OF NEW HAVEN OBJECTS TO PUBLISHING ONLY PART OF ITS ANSWER AND SUBMITS THE FULL RESPONSE BELOW:**

Defendants will seek to identify relevant internal affairs records and supplement this response regarding discipline issued as a result of a finding of an arrest made without probable cause.

The defendant has undertaken an extensive search for internal affairs records from 1988-1998, and specifically relating to prosecutions without probable cause. The Defendant/City notes that in accordance with Section 7-109 of the Connecticut General Statutes, Internal Affairs Investigations between 1988-1998 that did not result in a substantiation of the Complaint allegations were approved for destruction.  A copy of the letter approving destruction is provided.  The Defendant/ City has provided what it found regarding internal affairs investigations, even though notifications do not pertain to prosecutions without

probable cause. The Defendant City reserves the right to supplement this interrogatory, in accordance with the Federal Rules of Civil Procedure.

See attached documents Bates Numbered NH-CARMON 008895- NH-CARMON 008974. (defendant City claims all identified pages should be submitted if this answer is published to the jury)

Interrogatory #11 to City: Identify—by name, date, rank, and discipline imposed—each and every member of the NHPD who was investigated, counseled, re-trained, subjected to enhanced or additional monitoring or supervision, disciplined, terminated, or otherwise subjected to employment-related consequences between January 1, 1988, and March 3, 1998, as a result of an allegation, suspicion, or determination that he or she made an arrest or initiated a prosecution without probable cause.

**PORTION OF RESPONSE PLAINTIFF SEEKS TO ADMIT**: The Defendant/City has no record of any complaint, whether external or internal, being made between 1988-1998 regarding arresting or initiating a prosecution without probable cause. The Defendant/City has confirmed it has no record of any employee being disciplined between 1988-1998 for arresting or initiating a prosecution without probable cause.

**CITY OF NEW HAVEN OBJECTS TO PUBLISHING ONLY PART OF ITS ANSWER AND SUBMITS THE FULL RESPONSE BELOW:**

Defendants will seek to identify relevant internal affairs records and supplement this response regarding discipline issued as a result of a finding of improper threatening or coercion of a witness or suspect.

[supplement]

The defendant has undertaken an extensive search for internal affairs records from 1988-1998, and specifically relating to threatening or coercing witness. The Defendant/City notes that in accordance with Section 7-109 of the Connecticut General Statutes, Internal Affairs Investigations between 1988-1998 that did not result in a substantiation of the Complaint allegations were approved for destruction. A copy of the letter approving destruction is provided. The Defendant/ City has provided what it found regarding internal affairs investigations, even though notifications do not pertain to threatening or coercing witnesses. The Defendant City reserves the right to supplement this interrogatory, in accordance with the Federal Rules of Civil Procedure.

See attached documents Bates Numbered NH-CARMON 008895-NH-CARMON 008974.

(defendant City claims all identified pages should be submitted if this answer is published to the jury)

31

Interrogatory #12 to City: Identify—by name, date, rank, and discipline imposed—each and every member of the NHPD who was investigated, counseled, re-trained, subjected to enhanced or additional monitoring or supervision, disciplined, terminated, or otherwise subjected to employment-related consequences between January 1, 1988, and March 3, 1998, as a result of an allegation, suspicion, or determination that he or she improperly threatened or coerced a witness or suspect.

> **PORTION OF RESPONSE PLAINTIFF SEEKS TO ADMIT**: The Defendant/City has no record of any complaint, whether external or internal, being made between 1988-1998 that witnesses or suspects were improperly threatened or coerced. The Defendant/City has confirmed it has no record of any employee being disciplined between 1988-1998 for improperly threatening or coercing a witness or suspect.

> CITY OBJECTS TO ADMISSIBILITY BEACUSE ONLY A PART OF THE RESPONSE IS INCLUDED, AND THE INTERROGATORY PERTAINS TO ACTIONS OCCURRING AFTER THE YEAR OF PLAINTIFF CARMON'S ARREST, 1994

Request to Admit #2 to City: Admit that the materials marked as NHPD_1310-2593 constitute the NHPD homicide file for the 810 Orchard Homicide (the "NHPD Homicide File").

> **PORTION OF RESPONSE PLAINTIFF SEEKS TO ADMIT**: Admit that Defendant has undertaken to assemble and produce the entire file regarding the 810 Orchard St. homicide, and that the documents produced at NHPD_1310-2592 are what have been identified as the file materials.

## 11.   EXHIBITS

All parties reserve the right to use exhibits on other parties' lists.

### For Plaintiff:[2]

See Appendix 1.

### For Defendant City of New Haven:

See Appendix 2.

### For Defendant Sweeney

---

[2]   Plaintiff's exhibit numbering is not totally sequential because he has designated some, but not all, of the deposition exhibits and is preserving the same exhibit numbering to avoid confusion.

See Appendix 3.

### For Defendant Dease

No additional exhibits.

### For Defendants Burton, Ponteau, and Carusone

See Appendix 3.

**12.   ANTICIPATED EVIDENTIARY PROBLEMS**

<u>For Plaintiff:</u>  See motions *in limine* and annexed briefing.

<u>For Defendants</u>: See Motions in Limine and memoranda of law.

**13.   MOTIONS IN LIMINE**

See separate filings.

**14.   GLOSSARY**

Not applicable.

**15.   STIPULATED FACTS AND AGREED CONTENTIONS OF FACT AND LAW**

A.   <u>Stipulation of Uncontested Facts</u>

1.   Former New Haven Police Department Detective Anthony DiLullo died in 2000.

2.   Former New Haven Police Department Detective Ralph DiNello died in 2013.

3.   Former New Haven Police Department Detective Leroy Dease died in 2022.

B.   <u>Joint Statement of Contested Issues of Fact and Law</u>

1.   Individual Defendants' civil liability for *Brady* violation(s)

2.   Individual Defendants' civil liability for fabrication of evidence

33

3. Individual Defendants Sweeney, Dease, or Ponteau's civil liability for malicious prosecution

4. Individual Defendants Sweeney or Dease's civil liability for *Franks* violation

5. Individual Defendants' civil liability for failure to intervene

6. City of New Haven -- *Monell* liability

   a. Plaintiff's Statement: (i) Theory 1: pervasive practice of misconduct; (ii) Theory 2: failure to supervise.

   b. City's statement: (i) *Monell* liability -- policy; (ii) *Monell* liability -- custom/practice

7. Whether any of the Individual Defendants is protected from civil rights liability by qualified immunity (issue for Court not jury)

8. Negligence as to Individual Defendants and City

9. Contributory negligence of Plaintiff Carmon

10. Individual Defendants' governmental immunity

11. City of New Haven assumption of liability under CGS 7-465

12. Compensatory damages

13. Punitive damages

14. All issues remaining following the Court's ruling on the parties' Motions in Limine

The parties are filing their proposed *voir dire*, proposed jury instructions, and proposed verdict forms under separate cover.

## 16.    COURTROOM TECHNOLOGY

Plaintiff plans to submit a technology request form by email to the Courtroom Deputy.

*    *    *

The undersigned certify that this document is a product of consultation among counsel for all parties participating in this trial.

Dated: December 12, 2025

By:        */s/ Douglas E. Lieb*
Counsel for Plaintiff Adam Carmon

By:        */s/ Thomas R. Gerarde*
Counsel for Defendant City of New Haven

By:        */s/ Jonathan C. Zellner*
Counsel for Defendant Michael Sweeney

By:        */s/    Scott R. Ouellette*
Counsel for Defendant Lee Dease as Administrator of the Estate of Leroy Dease

By:        */s/    William J. Melley III*
Counsel for Defendants Gilbert Burton, James Ponteau, and Peter Carusone