UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ADAM CARMON | : | NO.: 3:23-CV-00944 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CITY OF NEW HAVEN, ET AL | : | AUGUST 3, 2026 |

## <u>MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE REVISED DESIGNATIONS [DOC. #342]</u>

Defendant, City of New Haven ("City"), respectfully submits this Memorandum in Opposition to plaintiff's Motion *in Limine* to Preclude Revised Testimony Designations. [Doc. #342.] Plaintiff's motion asks this Court to do something no court has done: to hold that prosecutorial *Brady* violations committed during a criminal prosecution permanently strip former testimony of its admissibility under Rule 804 in subsequent civil litigation. Neither *Brady* nor Rule 804 supports such a sweeping rule.

## I.    PLAINTIFF ATTEMPTS TO TRANSFORM *BRADY* INTO AN EVIDENTIARY EXCLUSION RULE THAT DOES NOT EXIST

Plaintiff's motion rests on a legal premise that finds no support in either Rule 804(b)(1) or the cases interpreting *Brady*. Plaintiff argues that because his criminal conviction was later vacated based, in part, on *Brady* violations, the former testimony of unavailable witnesses is now inadmissible in this civil action. That argument conflates two distinct legal inquiries: the constitutional fairness of plaintiff's criminal prosecution and the admissibility of former testimony under the Federal Rules of Evidence in subsequent civil case.

The post-conviction proceedings addressed whether the prosecution satisfied its constitutional obligation to disclose favorable evidence during plaintiff's criminal

prosecution. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995); *Strickler v. Greene*, 527 U.S. 263, 280–81 (1999). Those decisions concern the constitutional validity of a criminal conviction. They do not establish that a *Brady* violation retroactively renders otherwise admissible former testimony inadmissible under Rule 804(b)(1) in subsequent civil litigation.

To the extent courts have considered whether *Brady* violations affect the admissibility of prior testimony in later proceedings, they have done so only in the narrow circumstance where the government seeks to introduce the criminal defendant's own prior testimony in a subsequent criminal prosecution. *See United States v. Pelullo*, 105 F.3d 117 (3d Cir. 1997). Even there, exclusion is not automatic. Rather, the Court must determine whether the constitutional violation actually induced the defendant's testimony by asking whether the defendant would have testified absent the *Brady* violation. *Id. Pelullo* therefore illustrates the limited nature of the inquiry: it does not hold that *Brady* violations categorically render all former testimony inadmissible, much less the testimony of third-party witnesses offered decades later in a civil rights action to explain what investigating officers knew and why they acted as they did.

Indeed, the authorities upon which the plaintiff relies demonstrate the narrowness of the principle he advances. In *Williams v. State*, 416 Md. 670 (2010), the Maryland Court of Appeals considered whether the admission of an unavailable eyewitness's former testimony at a subsequent criminal trial violated the defendant's constitutional rights because *Brady* material had deprived the defendant of an adequate opportunity for cross-examination at the earlier trial. Likewise, *United States v. DiNapoli*, 8 F.3d 909, 914–15 (2d Cir. 1993), addressed whether grand jury testimony was admissible at a

2

subsequent criminal trial, focusing on whether the government possessed a "similar motive" to examine the witnesses during the grand jury proceedings as it did at trial. Neither decision involved the admissibility of former testimony in a subsequent civil action, much less a § 1983 case in which the testimony is offered not to establish the plaintiff's guilt, but to explain what investigating detectives knew, what eyewitnesses reported and why investigators acted as they did. Plaintiff therefore asks this Court to expand criminal-law principles far beyond the context in which they have been recognized, effectively transforming *Brady* from a constitutional rule governing the fairness of criminal prosecutions into a broad rule of evidentiary exclusion applicable to subsequent civil litigation.

Neither Rule 804 nor the cases cited by plaintiff support such an expansion. Plaintiff cites no authority to adopt the sweeping evidentiary rule he proposes. Under plaintiff's theory, any conviction later vacated because of *Brady* violations would automatically render all former testimony of witnesses inadmissible in every subsequent proceeding, regardless of the purpose for which that testimony is offered. Plaintiff cites no authority to adopt the sweeping evidentiary rule he proposes and neither Rule 804 nor *Brady* supports such a categorical result.

II.    **RULE 804 ASKS A DIFFERENT QUESTION**

Plaintiff's argument is inconsistent with the text of Rule 804(b)(1). The Rule permits the admission of former testimony where the declarant is unavailable and the party against whom the testimony is offered had "an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1). The Rule does not require that the prior examinations have been perfect, exhaustive or informed

by every piece of evidence later discovered through subsequent proceedings. *United States v. Carneglia*, 256 F.R.D. 366, 375 (E.D.N.Y. 2009)("Under Rule 804(b)(1), 'similar motive' does not mean 'identical motive.'" quoting *United States v. Salerno*, 505 U.S. 317, 327 (1992)). Rather, the Rule focuses on the opportunity to examine the witness and whether the party possessed a substantially similar motive to do so at the time the testimony was given. *United States v. Jackson*, 335 F.3d 170, 178 (2d Cir. 2003).

Plaintiff plainly possessed both. During his criminal prosecution, plaintiff had every incentive to challenge the credibility, reliability and accuracy of the State's witnesses. His motive was to undermine the prosecution's case and establish his innocence, which is the same fundamental objective he advances here in attempting to discredit the eyewitnesses and investigating officers. As the Second Circuit has explained, the relevant inquiry is whether the party previously had "an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue." *United States v. Jackson*, 335 F.3d 170, 178 (2d Cir. 2003) (quoting *DiNapoli*). Plaintiff extensively cross-examined these witnesses during the criminal proceedings, subjecting their testimony to the scrutiny of a party "interested in thoroughly testing [its] validity." *Id.* at 176–77.

That subsequent post-conviction litigation uncovered additional impeachment material does not retroactively eliminate plaintiff's prior opportunity or alter the motive under which that testimony was developed. *See Salerno*, 505 U.S. at 326 (Blackmun, J., concurring); *Jackson*, 335 F.3d at 176-78; *Carneglia*, 256 F.R.D. at 374-76; *United States v. Monaco*, 702 F.2d 860, 867–72 (11th Cir. 1983).

4

The testimony defendants seek to admit was elicited during plaintiff's criminal prosecution, where plaintiff's motive to challenge the State's witnesses was fully developed and directly aligned with his present objective of undermining their credibility. Unlike *DiNapoli*, this case does not involve differing litigation incentives between two distinct proceedings. Instead, plaintiff attempts to graft *Brady* principles onto Rule 804 by arguing that later-discovered impeachment evidence rendered his earlier cross-examination constitutionally inadequate. *DiNapoli* neither addressed nor endorsed such a theory.

Ultimately, plaintiff seeks to transform Rule 804(b)(1)'s "opportunity and similar motive" inquiry into an inquiry regarding whether later developments might have improved the effectiveness of cross-examination. That is not the Rule. The Rule does not condition admissibility on the absence of later-discovered impeachment evidence, nor does it require courts to reconstruct how prior testimony might have unfolded had subsequent factual developments been known. Plaintiff's proposed rule would instead require the jury to assess that conduct through the lens of post-conviction proceedings and information developed decades later. Plaintiff's arguments therefore go to the weight the jury should assign the testimony, not its admissibility under Rule 804(b)(1). *See United States v. Monaco*, 702 F.2d 860, 867–72 (11th Cir. 1983) (holding that prior testimony remained admissible under Rule 804(b)(1) despite later-discovered impeachment evidence because the omitted cross-examination would have gone only to credibility).

Plaintiff remains free to present the *Brady* evidence, the habeas court's findings (to the extent admissible), expert testimony regarding eyewitness identification, and any

5

other impeachment evidence bearing on the credibility or reliability of these witnesses. Those issues are properly resolved by the jury in determining what weight to afford the testimony—not by excluding the testimony altogether under Rule 804(b)(1).

### III.    TESTIMONY IS HIGHLY PROBATIVE BECAUSE IT EXPLAINS WHAT DETECTIVES KNEW

The issues presented in this civil action are fundamentally different than the issues presented at plaintiff's criminal trial. Here, the jury must evaluate the conduct of the investigating detectives and, as to the municipal claims, the conduct, knowledge and alleged customs or practices attributable to the City based on the information that existed and was available when the investigation and prosecution unfolded. The third-party testimony plaintiff seeks to exclude is highly probative because it establishes what information investigators possessed, what eyewitnesses reported to law enforcement, what evidence detectives developed and why they pursued the investigative decisions that they did. It likewise bears directly on what information was known to the City's employees and what factual circumstances existed as the City allegedly failed to train, supervise or otherwise respond. Without that evidence, the jury would be asked to assess the City's alleged liability based not upon the information available at the time, but upon facts and conclusions developed only through decades of subsequent litigation. Those issues lie at the heart of plaintiff's claims against both the individual detectives and the City.

The central question in this action is whether the detectives violated plaintiff's constitutional rights through the manner in which they conducted the investigation. Likewise, plaintiff's municipal liability claims necessarily depend upon what the detectives knew and did during that investigation, the information known to those

employees and whether any alleged municipal custom, practice or failure caused the constitutional violations plaintiff alleges. Those inquiries necessarily turn upon what information detectives possessed, what evidence they received from witnesses and what investigative choices they made in light of the information available to them at the time. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

The reasonableness of the detectives' investigative decisions, and any derivative municipal liability, cannot fairly be evaluated by excluding the very evidence that informed those decisions while permitting the jury to consider only information uncovered decades later through post-conviction litigation. The Federal Rules of Evidence therefore favor admission of testimony explaining the contemporaneous knowledge of the investigating officers and the factual context within which the City allegedly acted. Without that evidence, the jury would be asked to evaluate both the detectives' conduct and the City's alleged liability in a factual vacuum, informed only by developments that occurred years—or decades—after the investigation had concluded.

Plaintiff's proposed exclusion would produce precisely that result. Plaintiff seeks to exclude testimony describing what eyewitnesses told investigators, what identifications were made and what evidence detectives considered, while simultaneously relying upon post-conviction findings, later-discovered impeachment material and subsequent scientific developments to challenge the investigation. That approach improperly invites the jury to evaluate both the detectives' conduct and the City's alleged liability exclusively through hindsight. Section 1983 liability, however, is evaluated based upon the facts and circumstances confronting officers at the time of the

challenged conduct—not upon information developed years later during post-conviction proceedings.

Plaintiff devotes substantial portions of his motion to arguing that the eyewitness identifications made by Jaime Stanley and Raymond Jones ultimately proved unreliable in light of evidence developed during the post-conviction proceedings and subsequent scientific developments regarding eyewitness identification. But plaintiff conflates credibility with admissibility. Stanley has never recanted her identification of plaintiff, and plaintiff does not contend that either Stanley or Jones withdrew the identifications they provided during the investigation and criminal proceedings. Rather, plaintiff relies upon later-developed impeachment evidence, subsequent scientific developments and the post-conviction court's assessment of that evidence to argue that the identifications should now be afforded little or no weight. Those are classic subjects for impeachment, competing expert testimony and argument to the jury—not grounds for wholesale exclusion.

Defendants are entitled to present the testimony as it existed at the time of the investigation so that the jury may evaluate what information investigators possessed, what Stanley and Jones reported and why detectives proceeded as they did. Plaintiff, in turn, remains free to present evidence concerning the alleged deficiencies in those identifications, the circumstances under which they were obtained, subsequent scientific developments regarding eyewitness identification and the findings reached during the post-conviction proceedings. Those subsequent developments bear upon the credibility and weight the jury should assign the testimony—not its admissibility.

8

The same principle applies to the testimony of Detectives DiNello, DiLullo, Dease, Stephenson and the other investigating officers. Plaintiff seeks to exclude their testimony because subsequent proceedings questioned the reliability of certain evidence developed during the investigation. But the issue before this jury is not whether later courts ultimately agreed with every investigative conclusion reached decades ago. Rather, the relevant inquiry includes what these detectives knew, what witness statements and identifications they received, what evidence they developed and why they made the investigative decisions they did based upon the information before them at the time. The detectives are entitled to testify regarding those contemporaneous facts. Plaintiff remains free to challenge those conclusions through evidence of *Brady* violations, later-discovered impeachment material, expert testimony and the findings of the post-conviction court. Those later developments, however, do not erase the historical facts of the investigation or render inadmissible testimony explaining the information upon which detectives contemporaneously relied.

Moreover, plaintiff's argument assumes that the challenged testimony is relevant only if it conclusively establishes plaintiff's guilt. That is incorrect. The testimony is independently admissible because it explains the course of the investigation and the information upon which detectives acted. To the extent the testimony is also probative of whether plaintiff committed the Orchard Street shooting, plaintiff's subsequent challenges to its reliability do not transform otherwise admissible evidence into inadmissible evidence.

Excluding the testimony would substantially prejudice defendants' ability to present their defense. The individual detectives are entitled to explain what information

9

they possessed, what evidence they received, and why they made the investigative decisions they did. Likewise, the City is entitled to defend against plaintiff's municipal liability claims based upon the information its employees possessed and the circumstances that actually existed at the time, not a record reconstructed decades later through post-conviction proceedings. Plaintiff's proposed exclusion would permit the jury to hear the evidence developed through years of subsequent litigation while depriving defendants of the contemporaneous evidence upon which investigators actually relied. The City cannot fairly defend the conduct of its employees, or the reasonableness of its alleged customs, practices, supervision or training, if the jury is permitted to evaluate those issues through evidence developed decades after the fact while excluding the evidence that informed the investigation itself.

Plaintiff's arguments concern the significance and reliability of the challenged testimony in light of evidence developed years later. Those issues are appropriately addressed through the adversarial process and go to the weight of the evidence, not its admissibility. Plaintiff is free to argue that the eyewitnesses were mistaken, that later-discovered evidence undermines their testimony or that the post-conviction court correctly found the conviction unreliable. Defendants are equally entitled to argue that the eyewitness testimony, together with the other evidence presented, supports the conclusion that plaintiff committed the crime notwithstanding the subsequent habeas proceedings.

To hold otherwise would require the Court to exclude evidence that indisputably existed, was considered by investigators, and informed the course of the investigation simply because later proceedings reached different conclusions regarding its reliability.

10

Rule 804 and the Federal Rules of Evidence do not require such a result. Rather, they permit the jury to consider the challenged testimony together with plaintiff's impeachment evidence in evaluating both the conduct of the investigating detectives and the City's alleged liability.

## IV.   CONCLUSION

For the foregoing reasons, plaintiff's Motion *in Limine* to Preclude Revised Testimony Designations should be denied.

DEFENDANT,
CITY OF NEW HAVEN


By_____*/s/ Thomas R. Gerarde*_____
   Thomas R. Gerarde (ct05640)
   Alan R. Dembiczak (ct25755)
   Amanda E. Stone (ct31531)
   Lidia M. Michols (ct31789)
   Abigail R. Willauer (ct31834)
   Howd & Ludorf, LLC
   100 Great Meadow Road
   Suite 201
   Wethersfield, CT  06109
   Ph:  (860) 249-1361
   Fax:  (860) 249-7665
   E-mail: tgerarde@hl-law.com
   E-mail: adembiczak@hl-law.com
   E-mail:  astone@hl-law.com
   E-mail:  lmichols@hl-law.com
   E-mail: awillauer@hl-law.com